## RAMIREZ et al. v. FIRST STATE BANK & TRUST CO. OF RIO GRANDE CITY.

No. 9664.

Court of Civil Appeals of Texas. San Antonio.

Dec. 18, 1935.

Rehearing Granted Feb. 19, 1936.

Appellee's Rehearing Denied March 25, 1936.

Arnold & Cozby, of San Antonio, and J. T. Canales and Abney & Whitelaw, all of Brownsville, for appellants.

Hill & Greer, of Mission, and John A. Pope, Jr., and H. P. Guerra, Jr., both of Rio Grande City, for appellee.

SMITH, Chief Justice.

At the inception of the transactions involved in this controversy, Jesus Maria Ramirez and G. A. Guerra, partners, operated a business in Starr county, under the firm name of Ramirez & Guerra. Being indebted to First State Bank & Trust Company of Rio Grande City, the firm,

through Ramirez, on October 20, 1928, executed its note for $3,332.69, payable, on demand, to the bank. Shortly afterwards the firm was dissolved, Ramirez retiring, and was reorganized, and the business continued, by the said Guerra and Victoriana F. Martinez, under the firm name of Guerra & Martinez.

A few weeks later, on January 14, 1929, the said Jesus Maria Ramirez died, leaving a will subsequently probated, in which his son, Rafael, was named, and afterwards qualified, as independent executor of his father's estate, without bond. But Rafael soon thereafter died.

Following the death of Rafael Ramirez, independent executor, H. Garza, Jr., county judge of Starr county, was appointed temporary administrator of said estate, by a special county judge, and promptly qualified. Afterwards his appointment was ordered to be made permanent by the special county judge, but he never qualified as such, never filed a final report or account, was never discharged, and no further action seems to have been taken towards continuing the administration.

In the meantime, during Garza's tenure as temporary administrator of the Ramirez estate, the bank took a renewal of said Ramirez & Guerra note; the renewal being executed by the new firm of Guerra & Martinez, and by Garza, as temporary administrator of the estate of said Jesus Maria Ramirez, deceased. The record does not show what became of the original note, or whether it was surrendered to the maker at the time of the renewal. It was not produced upon the trial, but was proved up by secondary evidence. This renewal bore date of January 23, 1930, and was for $2,129.30. After Garza's tenure of temporary administrator had terminated, he joined Guerra & Martinez in the execution of two further renewals of said obligation, as administrator of the Ramirez estate. Said renewals were dated October 21, 1930, and February 20, 1931, and were for $2,289.56 and $2,365.40, respectively.

By his will, Jesus Maria Ramirez devised his estate, other than the homestead, and certain specific bequests not necessary to set out here, to his three children, two sons, Rafael and Alonzo, and one daughter, Claudin; and to his widow, Josefa, he left the family home, for life, with remainder over to his three grandchildren, Juan Lino, Maria de la Paz, and Reynoldo Ramirez, children of his son Alonzo.

The son Rafael died, intestate, about a year after his father, leaving six children, who inherited his part of the estate.

The son Alonzo is still living, as well as his said three children.

The daughter, Claudin, who married Francisco Montalvo, and who died before her father, the testator, was survived by her minor son, Leonel, and by her said husband, who had a life estate in his son's bequest from his mother. Francisco Montalvo was appointed and qualified as guardian of the person and estate of his said minor son, Leonel.

In his will Jesus Maria Ramirez directed that all his debts be paid, in equal portions, by the three principal legatees under his will, to wit: Rafael, Alonzo, and Claudin.

But the record seems to show, efficiently, that the testator, Jesus Maria Ramirez, left no debts which were not paid prior to the filing of this suit, except that sued on herein.

The record shows, further, that the heirs and legatees of the testator disregarded the attempted administration upon said estate, and made an amicable, though legally doubtful, distribution thereof in September, 1930, whereby they apportioned it among themselves in substantial obedience to the terms of their ancestor's will. In any event, the heirs and legatees at that time appropriated and entered into possession, and have ever since exercised dominion over, the estate, so that Alonzo, and the heirs of Rafael and Claudin, have possession of the bulk of the property.

On December 20, 1932, the bank filed this suit upon the last renewal note hereinabove described, seeking to recover of Guerra & Martinez, as well as of the estate of the elder Ramirez, represented by its legal representatives and heirs.

In its original, and first and second amended original petitions, the bank declared and prayed for judgment upon the last renewal note, of February 20, 1931, for $2,365.90; but in its third amended original petition, upon which the cause was submitted below, it abandoned its suit upon the renewal note and sued upon the original note of October 20, 1928, for $3,-332.69, executed by "Ramirez & Guerra, by Jesus Maria Ramirez," and prayed for recovery of an unpaid balance thereon.

Upon the trial, without a jury, the court rendered personal judgment upon the orig-

inal note, against only G. A. Guerra and Victoriana F. Martinez, as partners in succession to the original firm of (Jesus Maria) Ramirez & (G. A.) Guerra, who had executed that note. From that judgment Guerra & Martinez have not appealed. The trial court held that, although the estate of Ramirez was liable upon said note, the heirs and legatees were liable only in the relation of surety to Guerra & Martinez. And upon that holding the court rendered judgment of foreclosure against that estate, apportioned equally against Alonzo, the surviving son, the heirs of the deceased son, Rafael, and the legatees of the deceased daughter, Claudin, and ordered execution against the shares of the estate held by them, in said proportions, in consonance with the provisions of the will, that each of those three children should pay one-third of the debts of the estate. Those defendants have appealed from the decree of foreclosure, no personal judgment having been rendered against them.

█ It is deemed appropriate to consider, at the outset, the question of the validity of acts done by H. Garza, Jr., as temporary administrator of the estate of the elder Ramirez, and of his subsequent acts as administrator after his tenure of temporary administrator ended. It will be recalled that the first renewal note was executed by Garza during his tenure as temporary administrator, whereby he sought to bind the Ramirez estate upon that obligation. It must be conceded, and the record shows, that in the order of his appointment no power was conferred upon Garza to renew the note in question, and that being so his act in executing that obligation was void. Article 3379, R.S.1925; 13 Tex. Jur. p. 778. The consequence is that the estate was in no wise bound by Garza's signature, as temporary administrator, to that note. That instrument was, therefore, simply, a note executed by Guerra and Martinez, who were strangers to the Ramirez estate.

█ The record shows that, although Garza was afterwards appointed permanent administrator of the estate, he never qualified as such by making the prescribed bond therefor, or taking the prescribed oath. His tenure of temporary administrator having been terminated by operation of law, and he having failed to qualify as permanent administrator, his subsequent acts purportedly in behalf of the es-

tate were also void. 13 Tex.Jur. pp. 718, 720, 722; Dull v. Drake, 68 Tex. 205, 4 S.W. 364.

And in no event could Garza, as administrator, bind the estate by contract, as he was not thereunto authorized by statute, or by the will of the testator. 13 Tex. Jur. pp. 761, 762; McMahan v. Harbert's Adm'rs, 35 Tex. 451, 452; Altgelt v. Alamo Nat. Bank, 98 Tex. 252, 83 S.W. 6; Rice v. Conwill, 35 Tex.Civ.App. 341, 80 S.W. 393; Lovenskiold v. Nueces Hotel Co. (Tex.Civ.App.) 208 S.W. 759.

Nor could Garza so bind the estate, even upon express order of the probate court, at the times this was sought to be done by him in this case, nor prior to the enactment of article 3432a, Vernon's Ann. Civ.St. (Acts 1931, 42d Leg., p. 842, ch. 352, § 1). We therefore hold, and appellee does not seriously deny, that the acts of Garza, as temporary administrator, in executing the first renewal note, and as administrator in executing the subsequent renewals, were without any binding force or effect upon the Ramirez estate.

It is first contended by appellants that the cause of action upon which appellee recovered was not set up until appellee declared thereon in its third amended original petition, filed on June 19, 1934, which was more than four years after that cause of action accrued, and that therefore suit thereon was barred by the four-year statute of limitation (Vernon's Ann.Civ.St. art. 5529). Specifically, it is contended that the cause of action set up in appellee's original petition, filed on December 20, 1932, was upon the last renewal note, executed on February 20, 1932; that the first and second amended petitions, filed on June 11, 1933, and October 4, 1933, respectively, declared upon the same obligation; and that the declaration upon the original note, first set up in the third amended petition, filed on June 19, 1934, alleged a new cause of action from that theretofore declared upon, and being, upon a new cause, was barred.

Appellants contend that appellee's declaration, and prayer for recovery (in its original and first and second amended petitions) upon the last renewal note of February 20, 1931, was upon one cause of action, and that the declaration and prayer for recovery (in the third amended petition) upon the original note of October 20, 1928, constituted a different, and new cause of action, which was barred because it was

first asserted in the third amended petition, filed, concededly, more than four years after the note matured. The question is ruled, primarily, by the provision of the statute (Vernon's Ann.Civ.St. art. 5539b) upon the subject: "Art. 5539b. *Limitations as affecting amended and supplemental pleading.* Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence."

It is contended by appellants that that enactment is but a statutory declaration of the rule of decision theretofore established by our courts, and we think that is, at least substantially, so. In the years leading up to the enactment, the courts had gradually liberalized the rule of decision, so as to let in amended pleadings which declared upon causes of action growing out of the same transactions, without bringing such causes under the ban of limitations. With that liberalization in mind, we think it may properly be said that the rule of decision was crystallized into the statute. In the title of that enactment its purpose was declared to be "of saving amendments from limitation," while the emergency clause was tacked on because of "the importance of simplifying court procedure"—a familiar, albeit sometimes empty, legislative declaration in recent years. But, whatever its purpose, it was, substantially and after all, but a statutory declaration of a very familiar and wise rule of decision in this state. Ferguson Seed Farms v. Ferguson (Tex.Civ.App.) 52 S.W.(2d) 354. Appellants' contention must therefore be determined by statutory rule.

Looking again at appellee's original and successive petitions, it appears that in its original petition appellee grounded its cause of action solely upon the alleged obligation of the estate, and appellants, upon the third, and last, renewal note of February 20, 1931, executed more than two years after the maturity of the original note. It is true that in this pleading appellee undertook to describe the original note, alleging that the obligation sued upon was a renewal of the unpaid balance of the original obligation. This reference to the original was only historical or incidental, as showing the antecedent debt as a basis, or consideration, for the renewal. It was mere surplusage in the pleading. There was no allegation that appellants were liable, in this suit, by reason of the execution of the original note by their ancestor. Appellee negatived that liability by affirmatively alleging that their liability was, rather, upon the renewal note, executed by different parties more than two years after the original matured. Appellee's cause of action, set up in its original petition, was therefore solely upon the renewal note. There was no alternative prayer or allegation warranting an alternative cause of action or remedy. Appellee's first and second amended petitions were similar to the original, and had precisely the same effect.

In its third amended petition appellee abandoned its cause of action upon the renewal note, and asserted, for the first time, a cause of action upon the original obligation. The effect of this abandonment was a dismissal of the old and the commencement of a new and different cause of action. Wortham v. Boyd, 66 Tex. 401, 1 S.W. 109. It had the effect of a nonsuit upon the one, and a new suit upon the other. Bigham v. Talbot, 63 Tex. 271.

The question, then, is whether the new cause of action was based wholly upon and grew out of a new, distinct or different transaction from that set up in the original pleading. It seems obvious, upon any rational analysis of the question, in the light of the statute and authorities, that the execution and delivery of the original note, upon which appellee declared in its amended petition, was a wholly separate, distinct, and different transaction from the execution and delivery of the third renewal of that obligation two years later. The original note, finally declared upon, was executed by the partnership firm of Ramirez & Guerra, by Ramirez, on October 20, 1928. The renewal note, first sued on, was executed, not at all by Ramirez, then deceased, and whose estate is sought to be bound thereon, but by the partnership firm of Guerra & Martinez, by Guerra, and by Garza, purporting to act as administrator of the Ramirez es-

tate, although without authority to bind that estate to the obligation. The two obligations constituted separate, distinct, and different contracts, executed two years apart, by different parties. The fact that the renewal note may have been founded, in some undetermined degree, upon an antecedent obligation, which was evidenced and settled by the original note, is beside the question, since the original pleadings did not declare upon the antecedent debt, or the original note evidencing that debt. The suit is upon a written contract, first, in the original petition, upon one contract not executed by the person whose estate was sought to be bound, nor by any one authorized to bind that estate; and, second, in the third amended petition, upon an entirely different contract, executed, two years earlier than that finally sued upon, by the person whose estate was sought to be charged with liability. It cannot be rationally said that because the two contracts, not running concurrently, grew out of the same prior business dealings, limitation ceased to run against a cause of action upon the original contract with the commencement of a suit upon a cause of action upon the final contract. We conclude, upon authority of the decisions, as well as of article 5539b, that appellants' plea of limitations should have been sustained. Haddock v. Crocheron, 32 Tex. 276, 5 Am.Rep. 244; Bigham v. Talbot, supra; Wortham v. Boyd, supra; Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S.W. 707; Cain v. Bonner, 108 Tex. 399, 194 S.W. 1098, 3 A.L.R. 874; Hulsey v. Smith (Tex.Com.App.) 23 S.W.(2d) 706; Manning v. Christian, 124 Tex. 517, 81 S.W.(2d) 54; Thompson v. Van Howeling (Tex.Civ.App.) 49 S.W. (2d) 961; Ferguson Seed Farms v. Ferguson (Tex.Civ.App.) 52 S.W.(2d) 354; Southern Surety Co. v. First State Bank (Tex.Civ.App.) 54 S.W.(2d) 888. The four cases last cited were decided since the enactment of article 5539b, and three of them specifically construe that amendment. In the fourth case, Manning v. Christian, the Commission of Appeals, while not specifically deciding the point here involved, held, definitely, that an amended pleading to recover upon one of a series of notes executed at the same time in the same transaction was a distinct and new cause of action from that set up in a prior pleading upon other notes in the same series. The opinion goes further and inti-

mates, with obvious significance, that the new cause of action set up in the amended pleading was subject to the defense of limitation. No case is cited by appellee which supports its contention that an action upon a renewal note has the effect of suspending limitation against a cause of action upon the original obligation, set up in an amended petition. The original opinion herein is hereby withdrawn, and this opinion substituted therefor.

Because the cause of action set up in appellee's trial petition was barred by the four-year statute of limitation, the judgment appealed from must be reversed, and judgment is here rendered that appellee take nothing by reason of its suit against appellants, and pay all costs of the litigation.