FIRST STATE BANK & TRUST COMPANY OF RIO GRANDE CITY, TEXAS V. ALONZO RAMIREZ ET AL.

No. 7110. Decided March 22, 1939.
Rehearing overruled May 17, 1939.
(126 S. W. 2d Series, 16.)

*Julius F. Franki* and *Hill & Greer,* all of Mission, and *H. P. Guerra, Jr.,* and *John A. Pope, Jr.,* both of Rio Grande City, for plaintiff in error.

A new cause of action was not set up by the third amended petition within the meaning of Article 5539b, R. S. 1925, because it has always been the law that by amended petition the plaintiff may shift from the original note to the renewal thereof, or from the renewal to the original, without changing the cause of action so as to let in the bar of limitation. Bigham v. Talbot, 63 Texas 271; Cain v. Bonner, 108 Texas 399, 194 S. W. 1098; Emerson v. Mills, 83 Texas 385, 18 S. W. 805.

*James L. Abney* and *J. T. Canales,* both of Brownsville, for defendant in error.

MR. JUDGE MARTIN delivered the opinion of the Commission of Appeals, Section B.

This case was reversed and rendered by the San Antonio Court. 92 S. W. (2d) 523. A part of its statement is here quoted:

"At the inception of the transactions involved in this controversy, Jesus Maria Ramirez and G. A. Guerra, partners, operated a business in Starr County, under the firm name of Ramirez & Guerra. Being indebted to First State Bank & Trust Company of Rio Grande City, the firm, through Ramirez, on October 20, 1928, executed its note for $3,332.69, payable, on demand, to the bank. Shortly afterwards the firm was dissolved, Ramirez retiring, and was reorganized, and the business continued, by the said Guerra and Victoriana F. Martinez, under the firm name of Guerra & Martinez.

"A few weeks later, on January 14, 1929, the said Jesus Maria Ramirez died, leaving a will subsequently probated in which his son, Rafael, was named, and afterwards qualified, as independent executor of his father's estate, without bond. But Rafael soon thereafter died.

"Following the death of Rafael Ramirez, independent executor, H. Garza, Jr., county judge of Starr county, was appointed temporary administrator of said estate, by a special county judge, and promptly qualified. Afterwards his appointment was ordered to be made permanent by the special county judge, but he never qualified as such, never filed a final report or account, was never discharged, and no further action seems to have been taken towards continuing the administration.

"In the meantime, during Garza's tenure as temporary administrator of the Ramirez estate, the bank took a renewal of said Ramirez & Guerra note; the renewal being executed by the new firm of Guerra & Martinez, and by Garza, as temporary administrator of the estate of said Jesus Maria Ramirez, deceased. The record does not show what became of the original note, or whether it was surrendered to the maker at the time of the renewal. It was not produced upon the trial, but was proved up by secondary evidence. This renewal bore date of January 23, 1930, and was for $2,129.30. After Garza's tenure of temporary administrator had terminated, he joined Guerra & Martinez in the execution of two further renewals of said obligation, as administrator of the Ramirez estate. Said renewals were dated October 21, 1930, and February 20, 1931, and were for $2,289.56 and $2,365.40, respectively.

"By his will, Jesus Maria Ramirez devised his estate other

than the homestead, and certain specific bequests not necessary to set out here, to his three children, two sons, Rafael and Alonzo, and one daughter, Claudin; and to his widow, Josefa, he left the family home, for life, with remainder over to his three grandchildren, Juan Lino, Maria de la Paz, and Reynoldo Ramirez, children of his son, Alonzo.

"The son Rafael died, intestate, about a year after his father, leaving six children, who inherited his part of the estate.

"The son Alonzo is still living, as well as his said three children.

"The daughter, Claudin, who married Francisco Montalvo, and who died before her father, the testator, was survived by her minor son, Leonel, and by her said husband, who had a life estate in his son's bequest from his mother. Francisco Montalvo was appointed and qualified as guardian of the person and estate of his said minor son, Leonel.

"In his will Jesus Maria Ramirez directed that all his debts be paid, in equal portions, by the three principal legatees under his will, to wit: Rafael, Alonzo, and Claudin.

"But the record seems to show, efficiently, that the testator, Jesus Maria Ramirez, left no debts which were not paid prior to the filing of this suit, except that sued on herein.

"The record shows, further, that the heirs and legatees of the testator disregarded the attempted administration upon said estate, and made an amicable, though legally doubtful, distribution thereof in September, 1930, whereby they apportioned it among themselves in substantial obedience to the terms of their ancestor's will. In any event, the heirs and legatees at that time appropriated and entered into possession, and have ever since exercised dominion over, the estate, so that Alonzo, and the heirs of Rafael and Claudin, have possession of the bulk of the property.

"On December 20, 1932, the bank filed this suit upon the last renewal note hereinabove described, seeking to recover of Guerra & Martinez, as well as of the estate of the elder Ramirez, represented by its legal representatives and heirs."

The bank filed an original and three amended petitions. The original was filed immediately before limitation ran and the three subsequent amendments were concededly too late, unless limitation was tolled by the filing of the original.

■ The question presented here is one of limitation, it being claimed that as to the Ramirez heirs limitation had run against the original note sued on at the time the bank's last amended

petition was filed, since it only declared specifically upon the original note, all the others being upon the last renewal. While it is true that the prayer in the original petition filed December 20, 1932, specifically declared upon the last renewal note, an inspection of the body of the entire petition discloses that the suit was in fact a suit upon the balance owing on the original note. In other words, the original petition and all the several amendments were in legal effect suits upon the balance due upon the original note executed by Ramirez and Guerra. The difference in the several petitions is largely in the prayer for relief and in the names of the defendants. In each and all of them it was the debt due the bank which was the subject matter of the suit. The notes were mere evidences of that debt. There was, therefore, an exact identity of subject matter in the original petition and the several amendments. There was in part an identity of parties. We are of the opinion, therefore, that the original petition was sufficient to toll the statute of limitation as to all parties then legally made defendants. This case, in our opinion, comes within the spirit, if not the letter, of the comparatively recent statutory enactment cast into Article 5539b, Vernon's Annotated Civil Statutes, in the following language:

"*Limitations as affecting amended and supplemental pleading.* Whenever any pleading is filed by any party to a suit embracing any cause of action, cross action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence."

■ In other words, it is our opinion that where the same debt is sued on in the original petition and subsequent amendments, the mere fact that there is some change in the facts or grounds of liability does not make a distinct or different transaction or occurrence except as to new parties brought in after limitation had run, even though there are several renewal notes, as in this case. This holding is subject to the further rule that there must have been a bona fide intention that process be issued and served and due diligence exercised that such process issue and be served as contained in numerous authorities. We quote:

"It is the settled law of this state that the mere filing of the

petition in a suit of this nature does not toll the statute of limitations. There must be a bona fide intention also that process be issued and served and due diligence exercised that such process issue and be served. Ricker v. Shoemaker, 81 Texas 22, 16 S. W. 645; Hannaman v. Gordon (Tex. Com. App.) 261 S. W. 1006; Ferguson v. Estes & Alexander (Tex. Civ. App.) 214 S. W. 465; Wood v. Railway Co., 15 Texas Civ. App. 322, 40 S. W. 25; Railway v. Hubbard (Tex. Civ. App.) 190 S. W. 793; Estes v. McWhorter (Tex. Civ. App.) 182 S. W. 887, and cases there cited." Austin v. Proctor, 291 S. W. 702.

In the present state of this record we are not able to reverse and render, and deem it advisable to reverse and remand instead. We find no case decided by us since the enactment of the above statute sufficiently close in its facts to the present situation to be of controlling importance.

We make note of the fact that all the several petitions filed in this case set up a fairly full history of the transaction, beginning with the execution of the original note and ending with a verbatim description of the last renewal note. Every petition filed, therefore, fundamentally rested for a recovery upon the unpaid portion of the debt owing the bank. Guerra and Martinez have not appealed. The statute of limitation was tolled as to all of the Ramirez heirs properly in the original suit and has run in favor of all of Ramirez's heirs subsequently named in petitions filed after the statutory period of limitation had elapsed. We agree with the Court of Civil Appeals in the view that the acts of the temporary administrator were void.

Judgments of the Court of Civil Appeals and the trial court are reversed and this cause is remanded for further proceedings in accordance with this opinion.

Opinion adopted by the Supreme Court March 22, 1939.

Rehearing overruled May 17, 1939.