## RICHARDSON et al. v. HUGHES.

### No. 8939.

Court of Civil Appeals of Texas. Austin.
Nov. 27, 1940.

Rehearing Denied Dec. 31, 1940.

Collins, Jackson & Snodgrass, of San Angelo, for appellants.

R. G. Hughes, of San Angelo, for appellee.

BAUGH, Justice.

Upon a re-examination of the record and a careful consideration of appellants' motion for a rehearing, we have concluded that the motion should be granted. To prevent unnecessarily encumbering the published reports, we are withdrawing the former opinion written herein, and substitute this in its stead.

This suit was by Robert Hughes, independent executor of the estate of Mrs. Emma Cornell, deceased, owner of and upon certain vendor's lien notes originally executed in 1914 in part payment for 96 acres of land in Irion County, payment of which was subsequently assumed by D. L. Hess; for foreclosure of such lien; and against the Richardsons as claiming an interest in said lands, ·alleged to be subordinate to such lien.

The Richardsons answered setting up a judgment lien arising out of a judgment in favor of Mrs. Richardson against Hess, duly abstracted and recorded in Irion County, a levy of execution upon, and sale by the sheriff thereunder, the lands as the property of Hess, the purchase thereof by Mrs. Richardson at such ·execution sale, and sheriff's deed to her. Further, that the vendor's lien asserted by Hughes was barred by limitation of four years.

Trial was to the court without a jury and judgment rendered for plaintiff as prayed for; hence this appeal. Upon request duly made, the trial court filed findings of fact and conclusions of law.

The ` controlling question presented is which lien,· the judgment lien or the vendor's lien, is superior.

The original vendor's lien notes were variously assigned, and their maturity dates extended. The land also was conveyed several times wherein the grantee assumed payment of the indebtedness against it, and some of it was paid off. The only conveyance pertinent to our inquiry here was one to D. L. Hess on October 25, 1930, recorded December 23, 1930, wherein Hess assumed a merged balance of about $3,400, then due on said notes to the estate of M. A. Smith, deceased, of which Jerry Monroe was then temporary administrator. On December 17, 1931, Jerry Monroe as such temporary administrator applied to the Probate Court of Tom Green County, where administration of the Smith estate was pending, for authority to bring suit against Hess on said notes. This authority was granted, suit thereon filed in Tom Green County, and notice of lis pendens filed in Irion County on December 18, 1931. This suit, however, was without application to, or authority of, the Probate Court, compromised and settled by such temporary administrator upon payment by Hess of $500 and his execution and acknowledgment of an extension agreement dated June 3, 1932, extending the maturity dates of said notes to June 1, 1934. This compromise of such suit, and the extension agreement made by Hess, was reported by him to the Probate Court on September 19, 1932. Said notes and lien were thereafter assigned to Hughes as executor and no question is raised as to his ownership. The extension agreement was not filed for record in Irion County until October 15, 1936.

Meantime, Mrs. Lela Viola Richardson had on February 6, 1933, obtained a personal judgment against D. L. Hess for $1,800, had caused same to be abstracted, and an abstract thereof filed in Irion County on August 15, 1934, properly recorded and indexed. Alias execution was issued out of the District Court of Tom Green County on said judgment to Irion County, on January 8, 1935, said lands levied upon and sold at sheriff's sale as the property of Hess, and bought in by Mrs. Richardson by crediting the amount of her bid—$250 —on her judgment against him.

▇ ·Appellants' first contention is that under the facts above stated the notes sued on were barred of record by limitation under Arts. 5520, 5522, and 6627, R.C.S., Vernon's Ann.Civ.St. Arts. 5520, 5522, 6627, when the levy was made and when Mrs. Richardson bought in said lands, and that her purchase of the lands at execution sale in February, 1935, gave her good title thereto.

The last recorded extension of said notes showed the last due to mature on January 1, 1927; but by deed, duly recorded, dated October 25, 1930, D. L. Hess, the grantee, assumed payment thereof. Under this assumption, it is now settled that said notes would not be barred by limitation until

four years thereafter, that is, October 25, 1934. Bellah v. Dennis, 129 Tex. 367, 104 S.W.2d 490, and cases therein cited. Consequently, when Mrs. Richardson filed her abstract of judgment in Irion County on August 15, 1934, the notes and vendor's lien securing them were still valid obligations and her judgment lien inferior thereto. And the extension agreement of June 3, 1932, extending their maturity to June 1, 1934, continued such superiority of lien at least to June 1, 1938, if it were a valid extension and the holder of said notes not barred from asserting it by failure to have the extension agreement recorded until October 15, 1936.

Appellants contend that the purported extension agreement asserted by appellee as tolling the statute of limitation was void for lack of mutuality, and because made by the temporary administrator of the Smith estate, without permission or authority to do so granted by the Probate Court. In this regard the record shows the following: That Jerry Monroe was on July 15, 1929, appointed temporary administrator of the estate of Mrs. M. A. Smith, in lieu of the First National Bank of San Angelo theretofore appointed by the court as temporary administrator, and the temporary administration continued. Said order of appointment, however, did not in any manner define or express the powers conferred upon Monroe, as is clearly contemplated that it should under Arts. 3373 and 3379, R.C.S. 1925. Since he was to succeed the First National Bank as such temporary administrator, it may be inferred that such order of appointment clothed him with the same powers as had been conferred by the Probate Court upon the bank. The order appointing the bank as temporary administrator, however, is not shown of record, and we cannot determine the powers delegated to it.

No order of the Probate Court is shown to have ever been entered making permanent Monroe's appointment as temporary administrator. He appears to have continued only as temporary administrator and on December 17, 1931, more than two years after his appointment, he applied, in his capacity as temporary administrator, to the Probate Court for authority to bring suit on said notes. The order of the Probate Court only authorized him to bring such suit and foreclose the lien. It did not authorize him to settle, compromise, or otherwise collect or extend the debt, after suit thereon had been filed.

The extension agreement relied upon was signed by Hess and by the "attorney for the holders" of the notes. Report of this compromise and extension was made to the Probate Court on September 19, 1932, signed and sworn to by Mrs. R. G. Hughes, not by Monroe in his capacity as temporary administrator. Such report of his action in the premises is not shown to have ever been ratified or approved by the Probate Court. On the other hand, when Monroe as temporary administrator filed his account on April 29, 1936, in connection with the application for discharge of himself and the sureties on his bond (which evidently was in the nature of a final account, and though not shown in the record, it presumably showed what he had done with the notes against Hess), the order of the Probate Court thereon expressly refused to approve such account. The record further showed that when Guinn Williams, who had been appointed permanent administrator of the estate of Mrs. M. A. Smith, sold and transferred, under order of the Probate Court, numerous assets of the Smith estate, including the Hess notes, to appellee herein on June 9, 1937, only the original notes were described with recital that interest thereon had been paid up to 1929, and no reference to any extension thereof was made.

From these facts and circumstances, it appears that the compromise settlement of the suit which Monroe as temporary administrator was authorized and directed to bring, and the execution of the extension agreement, was not only not authorized by the Probate Court, but that the court failed and refused to approve it afterwards. And it was held in Willis v. Pinkard, 21 Tex. Civ.App. 423, 52 S.W. 626, that where suit was filed without such authority so given by a temporary administrator, even a subsequent order of the Probate Court could not give it validity.

Art. 3379, in addition to limiting the powers of temporary administrators to those specifically expressed in the order of the court appointing them, further expressly provides that "any acts performed by them as such administrators that are not so expressly authorized shall be void." This statute is to be strictly construed in limiting the powers of such temporary administrators. Thompson v. Southwestern Drug Corp., Tex.Civ.App., 129 S.W.2d 350.

Compromise of an insurance claim by a temporary administrator, absent express

258

authority to do so, was held ineffective in Germania Life Ins. Co. v. Peetz, Tex.Civ. App., 47 S.W. 687, 689. In Fenimore v. Youngs, 119 Tex. 159, 26 S.W.2d 195, the Supreme Court held that a temporary administrator must have express authority to do so, before he can maintain a suit. In Ramirez v. First State Bank & Trust Co., 92 S.W.2d 523, 525, the San Antonio Court of Civil Appeals held (which holding was approved by the Supreme Court in 133 Tex. 178, 126 S.W.2d 16) that an extension or renewal of a note made without express authority of the court to do so was not binding on the estate. And the necessity for such authority was recognized by the Legislature in Acts 1931, 42nd Leg., p. 842, Ch. 352, empowering an administrator "upon application and order authorizing same (to) extend any obligation owing by or owing to such estate." See Vernon's Ann. Civ.St. Art. 3432a.

■ We conclude, therefore, that in the absence of a showing of express authority to do so, the attempted renewal and extension by the temporary administrator of the notes in question was void, and did not toll the running of the statutes of limitation against them.

■ Nor are appellants estopped to deny the invalidity of such extension on the ground that Hess, having made such agreement, would be estopped to deny it. If the act of the temporary administrator were void, and the Smith estate not bound by it, Hess would not be bound. A void contract cannot be rendered enforceable by estoppel. State Nat. Bank v. Fink, Tex. Civ.App., 24 S.W. 937; First National Bank v. Dupuy, Tex.Civ.App., 133 S.W.2d 238, 239; 10 Tex.Jur., § 149, p. 260.

■ The other question presented is one of notice. That is, assuming the extension agreement to be valid, whether appellee lost his right to assert it by failure to record the extension agreement until October 15, 1936. If the agreement were void, its registration was a matter of no consequence. The rule in such cases is that if a party claiming the status of innocent purchaser against a prior unrecorded lien have knowledge of such facts as to put "a person of ordinary prudence upon inquiry, which, if reasonably pursued, would disclose the existence of the unrecorded encumbrance," he will be charged with notice. And whether he has, presents a question of fact for determination by the trial court. Martin v. Thaxton, Tex.Civ.App.,

103 S.W.2d 877, 879; 29 Tex.Jur., § 54, p. 860. The trial court found that appellants' attorney, prior to the levy of execution, was apprized of sufficient facts relative to the outstanding lien held by appellee, which if inquiry had been made would have disclosed to them its existence. Without setting it out here, we think the evidence was sufficient to sustain such finding; but if, as stated, the extension contract were void, the question of notice becomes immaterial.

■ Since we are not prepared to say that the case has been fully developed on the question of the temporary administrator's authority in the premises, the cause will be reversed and remanded instead of rendered. For the reasons stated, the order heretofore entered affirming the judgment of the trial court is set aside; and the judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.