## HUGHES v. McCLATCHY.
### No. 2892.

Court of Civil Appeals of Texas. Eastland.

Sept. 28, 1951.

Rehearing Denied Oct. 19, 1951.

Woodruff & Holloway, Brownwood, for appellant.

Burks & McNeil, Lubbock, Davis & Allcorn, Brownwood, for appellee.

GRISSOM, Chief Justice.

S. W. Hughes sued E. E. McClatchy to revive a dormant judgment against McClatchy owned by Hughes. A jury found that after the suit was filed, Hughes failed to exercise diligence to get personal service of citation on McClatchy prior to March 31, 1950. The court held the suit was barred by limitation, rendered judgment for defendant and Hughes has appealed.

The substance of appellant's points are that the statute, Art. 5532, requires only that such a suit be "brought" within ten years after the date of the judgment; that the evidence conclusively shows the suit was filed, citation was issued and efforts were made to obtain service of citation within said ten years and, therefore, his suit was not barred. Appellant contends (1) the law does not require continuing diligence to obtain service of citation after expiration of the period of limitation; (2) that the evidence conclusively shows he exercised reasonable diligence to obtain service; (3) that appellant had no duty to have appellee cited by publication, and (4) that the court erred in excluding statements made by appellee's father, now deceased, to appellant, as to the whereabouts of appellee.

It is undisputed that the dormant judgment sought to be revived was rendered on November 12, 1931; that Hughes filed suit to revive it on September 24, 1941; that citation was issued on the same day; that on October 1, 1941, the district clerk of Brown County sent the citation to Mr. Hughes stating the constable had returned the citation to him, stating he had made diligent search and found that McClatchy no longer resided in Brown County; that the constable did not give the clerk any information as to McClatchy's residence and that, if Mr. Hughes knew McClatchy's address, said citation could be served on him wherever he was living. No other citation was applied for nor issued until about March 31, 1950, when a second citation was issued and promptly served on McClatchy in Lubbock County on April 3, 1950.

Mr. Hughes testified, in effect, that on October 6, 1941, after McClatchy had not been found in Brown County and the citation had been returned to him, he mailed the first citation to the sheriff of Coleman County and told him he understood appellee lived near Bangs in Brown County; that the constable of Brown County had been unable to locate him in Brown County and Mr. Hughes had information that people by the same name lived in a certain community in Coleman County, near the Brown County line; that appellee might be related to these people and might be with or near them, or that they could give the sheriff McClatchy's address; that he needed service on appellee. Hughes asked the sheriff to do his best to locate and serve him. The citation was returned to Mr. Hughes with a notation by the Coleman County Sheriff that appellee could not be located.

Mr. Hughes testified that he wrote the tax assessors of Lubbock, Potter, Howard, Hale, Crosby, Dawson, Gaines, Floyd, Gray, Sterling, Hockley and Haskell Counties, asking whether appellee's name was on their tax rolls and, if so, his address; that all who replied stated McClatchy was not on their rolls. The first of these letters appear to have been written in 1942 and the last in 1944.

Further, with reference to the defense that the cause of action was barred because of lack of diligence in obtaining service on appellee before March, 1950, Hughes testified, in effect, that after the first citation was returned unserved, by the Brown County constable, he went to Bangs in Brown County, seeking information as to appellee's location; that he talked to appellee's father, who was dead at the time of the trial; that he asked him where appellee was; that he did not learn where appellee was as a result of that conversation. That appellee's father said he did not know where he was but thought he was somewhere in the Amarillo section. Objections to this answer was sustained and the jury instructed not to consider it. The question concerning the admissibility of this testimony will be discussed later.

Mr. Hughes testified that he and two other men kept constant check on the newspapers of West Texas to find the address of appellee, and others, against whom he had judgments or claims; that he took 15 to 20 newspapers, including the two Brownwood papers and Lubbock, Fort Worth and other daily newspapers; that he had checked them ever since 1940; that he did not have a record of writing anyone inquiring as to appellee's whereabouts after 1944; that he kept a man checking around wherever he would go but that you could not go much during the war; that in March, 1950, he read in a newspaper of the death of appellee's father and that said newspaper gave appellee's address; that this was his first information of McClatchy's address; that the newspaper stated he resided in Lubbock; that on March 28, 1950, he wrote the clerk of Brown County asking him to issue citation. Citation was issued March 31, 1950, and served on appellee in Lubbock County on April 3, 1950.

Appellant testified, in substance, that he did not write any letters inquiring as to the location of appellee from July 10, 1944, until 1950; that what he did in attempting to locate appellee from 1944 to 1950 was that he checked the newspapers and when he was traveling he "checked around to try to locate him."

In support of the jury finding that appellant failed to exercise diligence to get service of citation on appellant before March, 1950, appellee calls attention to the following evidence: Appellant alleged appellee was a resident of Brown County. Appellant denied that he knew appellee formerly lived in Brownwood, but testified that he understood appellee formerly lived near the Bangs community, about 8 miles from Brownwood. Appellant testified that he did not know that appellee had worked in a bank in Brownwood before it failed; that he inquired around Brownwood for appellee and could not locate him; that he did not make application for citation by publication; that he did not inquire of any of the McClatchy family, other than his father, as to appellee's address. Appellant testified that he did

not communicate with any Retail Merchants' Association. It was appellee's theory that appellant, in writing to the tax assessors and in other investigations, was not trying to locate appellee, but was only trying to locate property belonging to him; that after 1941 appellant made no real effort to have appellee served with citation until he learned that his father had died and appellee had inherited some property. Appellee's wife testified that she and appellee had lived in Lubbock County since August, 1941; that they formerly lived in Brown County; that they left Brown County on June 2, 1932, after having lived there more than ten years, during which time her husband owned real estate in Brown County and a home in Brownwood. She testified that during said time her husband was employed in a Brownwood bank as a bookkeeper and later as a teller; that after the bank failed he was employed by the Goodyear Sales & Service Company in Brownwood, for about 18 months; that he sold insurance there; that he was well known in Brownwood; that he was born and raised in the county; that he was working at a bank when it was robbed; that his name and picture were in the newspapers telling about his shooting the robber; that this was in November, 1930; that her husband was well known in the banking fraternity in Brownwood; that her husband had two brothers and three sisters and a father and mother who had lived in Brown County; that when appellee and his wife moved to "West" Texas, no effort was made to conceal their whereabouts; that during all the time they were gone from Brown County they kept in touch with their relatives and friends there and corresponded with them; that both she and her husband had relatives in Brownwood with whom she corresponded; that from 1932 to 1950, appellee and his wife made frequent visits to Brownwood; that during said visits they contacted their friends there; that during the time appellee and his wife lived in Brownwood, she was with various retail merchants; that when they moved from Brownwood, friends and acquaintances knew where they went and the McClatchy's

received letters from, and corresponded with, their relatives and other people in Brownwood, and still do; that when they left Brownwood they went to Whiteface, Texas, on June 2, 1932, and stayed there until 1941; that, after the first month in Whiteface, her husband was manager of a lumber yard there; that he continued as manager until 1941; that in 1941 they moved from Whiteface to Odessa, where they stayed seven months and then moved to Lubbock; that Whiteface is in Cochran County near Lubbock County; that appellee owned real estate in Whiteface; that after they moved to Lubbock they acquired a home in her husband's name; that the home was bought in December, 1941, and had been owned by them continuously down to the trial of the case, except that an exchange of homes had been made; that they had owned a home in Lubbock since December, 1941 and paid taxes thereon; that it was in appellee's name and on the tax rolls and the tax receipts were issued to appellee; that during the time she and appellee were married and lived in Brownwood she kept books for a business concern in Brownwood which was a member of the Brownwood Retail Merchants' Association; that she had occasion to check with said Association; that the lady in charge of said Association knew her.

Appellee testified to the same effect as his wife, and further, that from 1941 up until the trial of this case, he maintained a home in Lubbock County, that he had a telephone in his name and he was listed in the city directory. He testified that he was born in Brown County; that his mother and father lived south of Bangs; that he had two brothers and three sisters who lived there; that one brother still lives in Brownwood and had lived there practically all of the time; that another brother left Brown County in 1942; that his mother died in 1937; that during all the time he was gone from Brown County he frequently visited there, at least once a year and sometimes two or three times a year; that their visits were mentioned in the Brownwood papers; that the family had a reunion each year; that on several occasions they were in Brown County at family reunions;

that the reunions were frequently held in other counties but accounts thereof appeared in the Brownwood papers, giving appellee's name and address; that while he lived in Whiteface he knew all the county officials; that at Lubbock he knew quite a few of the county officials; that he knew the sheriff and the sheriff knew him. One of appellee's brothers now resides in Brownwood. The brother who moved from Brown County in 1942 is a railroad mail clerk with a route from Temple to Brownwood; that, since 1944, he had been in Brownwood twice every 6 days.

From the foregoing and other evidence of like import, it is evident that if appellant had a continuing duty to exercise reasonable diligence to secure service of citation on appellee until he was served, that a question of fact as to whether he exercised such diligence is raised by the evidence mentioned. In Austin, Banking Commissioner, v. Proctor, Tex.Civ.App., 291 S.W. 702, it was expressly held that a plaintiff's duty to exercise diligence to obtain service is "a continuing one." The facts of that case are somewhat similar to the facts of this case, except the time between the end of the limitation period and service was much shorter in the Proctor case. However, the opinion in the Proctor case discussed a statute, now Art. 5526, which provides that a suit shall be commenced and *prosecuted* within the limitation period, while the statute involved here, Art. 5532, requires only that the action shall be "brought" within ten years after the date of the judgment.

The following was quoted from the Proctor case in an opinion adopted by the Supreme Court, First State Bank & Trust Co. of Rio Grande City, et al. v. Ramirez, et al., 33 Tex. 178, 126 S.W.2d 16, 18, in which the subject was amendment of pleadings: "It is the settled law of this state that the mere filing of the petition in a suit of this nature does not toll the statute of limitations. There must be a bona fide intention also that process be issued and served and due diligence exercised that such process issue and be served. Ricker v. Shoemaker, 81 Tex. 22, 16 S.W. 645; Hannaman v. Gordon (Tex.Com.App.) 261 S.W. 1006; Ferguson v. Estes & Alexander (Tex.Civ.App.) 214 S.W. 465; Wood v. Gulf, C. & S. F. Ry. Co., 15 Tex.Civ.App. 322, 40 S.W. [24] 25; Panhandle & S. F. Ry. Co. v. Hubbard (Tex.Civ.App.) 190 S.W. 793; Estes v. McWhorter (Tex.Civ. App.) 182 S.W. 887, and cases there cited."

Hannaman v. Gordon, Tex.Com.App., 261 S.W. 1006, 1008, strongly relied on by appellant, is one of the cases cited above as authority for the proposition that diligence must be exercised to obtain service. In the Hannaman case, the Commission of Appeals did say that the suit was "brought" within the limitation period and that the applicable statute did not require that it be prosecuted within said period. The opinion was not adopted by the Supreme Court. However, the decision recognized that in order for the filing of a petition to toll the statute of limitations it must be filed with a bona fide intention that process shall be served at once upon a defendant and that delay in issuing citation, attributable to the plaintiff, would prevent the filing from interrupting the running of limitation. The Hannaman case was relied on by appellee in Owen v. City of Eastland, 124 Tex. 419, 78 S.W.2d 178, 179, as authority for its contention that its cause was not barred. The statute considered was Art. 5529, which merely required (as does the statute applicable in the instant case) that the suit be "brought" within the limitation period. Judge Harvey, in an opinion adopted by the Supreme Court, said appellee contended that under the Hannaman decision the filing of the suit satisfied the limitation statute; that in the Hannaman case, a statute dealing with the extension of liens on real estate, with particular regard to third persons, was involved; that "whatever else may be said of the holding in the Hannaman Case, the statute involved was different in various respects from the statute now under consideration; therefore, we shall lay that case aside and take up the authorities which deal with purely limitation statutes." The court said that the mere filing of a petition is not all that is required to "commence" a suit; that the purpose of such statutes was to relieve a defendant of the burden of disproving the merits of a claim asserted against him when, through

plaintiff's fault, the defendant is not called on to defend until the means of disproving same have been, presumably, lost through lapse of time.

The requirements of Workmen's Compensation statutes that claimant "bring suit" and "institute and prosecute" a suit have been held to mean the same thing. Maryland Casualty Co. v. Jones, 129 Tex. 392, 104 S.W.2d 847, 849.

In Long-Bell Lumber Co. v. Bynum, 138 Tex. 267, 158 S.W.2d 290, 292, suit on a note was filed on December 29, 1936, two days before it would have been barred by limitation, and citation issued to Potter County. This citation was returned unexecuted and an alias citation issued to Bexar County on March 30, 1938, which was returned unexecuted. Pluries citation was issued to Dallas County on January 11, 1939 and served on January 13, 1939. Judge Hickman, in an opinion adopted by the Supreme Court, said: "Viewing the evidence as a whole we think it presented a fact question * * * as to whether the statute of limitation was tolled by the filing of the suit. Obviously the evidence would have supported a fact finding that the plaintiff has not exercised proper diligence, but it cannot be said, as a matter of law, that it required such holding. Plaintiff exercised some diligence, and whether or not that was sufficient was a question of fact. The closest question is whether or not proper diligence was exercised by the attorneys after receiving information in the Fall of 1938 that defendant was residing in Dallas. However, the trial court was in better position than we are to know whether the attorney's conclusion that it was probably too late to procure service for the next term of court was based upon a reasonable ground. We cannot say, as a matter of law, that it was not."

■ The Court of Civil Appeals, Bynum v. Long-Bell Lumber Co., 5 Cir., 141 S.W.2d 392 had held that, as a matter of law, the suit was barred by limitation but, as shown above, the Supreme Court held that to be a question of fact. The statute in question, Art. 5527, required that the suit be commenced and prosecuted within

four years but the provision that it should be "prosecuted" is not mentioned by the Supreme Court. This decision compels the conclusion that continuing diligence to obtain service is required. We conclude that appellant had the duty, in order to toll the statute of imitation, to continue to exercise ordinary diligence to obtain service on appellee until service was obtained and that whether he did so was, under the evidence, a question of fact. See City of Gainesville v. Harder, 139 Tex. 155, 162 S.W.2d 93; First State Bank & Trust Co. of Rio Grande City, et al. v. Ramirez, et al., 133 Tex. 178, 126 S.W.2d 16, 18; Owen v. City of Eastland, 124 Tex. 419, 78 S.W.2d 178, 180; Real Estate Land Title & Trust Co. v. Beryle, et al., Tex.Civ.App., 88 S.W.2d 767, 768; Meyer v. Pecos Mercantile Co., Tex.Civ.App., 47 S.W.2d 435; Landers, et al. v. Jordan, Tex.Civ.App., 126 S.W.2d 677, 680.

■ In determining whether there is any evidence to support a jury finding, every intendment must be indulged in its favor and only testimony which tends to support such finding may be considered. We think the evidence raised a question of fact as to the exercise of diligence by appellant to secure the service of citation on appellee after it had been returned unexecuted by the officers of Brown and Coleman Counties in October, 1941. See Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904, 908; Loughry v. Hodges, Tex.Civ.App., 215 S.W.2d 669, 672; City of Austin v. Salazar et al., Tex. Civ.App., 241 S.W.2d 445, 456; Texas Rules of Civil Procedure, rule 301.

Appellant contends the judgment should be reversed because the court excluded Hughes' testimony as to what appellee's father said when Hughes inquired as to appellee's whereabouts, after his unsuccessful efforts in 1941 to get service on appellee in Brown and Coleman Counties. Hughes testified he went to the father's residence and talked to him. Appellee, then elicited the information that appellee's father was dead, whereupon, appellee objected to any statement made by appellee's father, apparently upon the ground that it constituted a violation of the so-called "Dead Man's

Statute," Art. 3716, whereupon, the following transpired:

"Q. You said you talked to his father; did you make any inquiry of his father as to his whereabouts? A. I did.

"Q. Did his father tell you where he was? A. He said—

"Appellee's Counsel: I ask for the court's ruling.

"Court: I sustain the objection.

"Q. I asked if you made inquiry of Mr. McClatchy's father as to the whereabouts of E. E. McClatchy? A. I did.

"Q. Did you obtain any information?

"Appellee's Counsel: We object to that; Mr. McClatchy is now dead and cannot refute any statement he might make; he has picked out the only dead one of the McClatchy family to testify about.

"Court: Go ahead and ask the question and I will pass on it.

\*    \*    \*    \*    \*    \*

"Q. Mr. Hughes, did you obtain any information from his father with reference to the whereabouts of E. E. McClatchy? A. I did not, except—do you want me to state—

"Q. If you obtained any information, go ahead. A. He didn't know, but he thought he was in Amarillo, in that section somewhere."

(The court then sustained appellee's objection and sustained his motion to instruct the jury not to consider said last statement but stated, in effect, that the court was excluding only what Mr. McClatchy said but was not excluding the testimony that Hughes made inquiry but did not obtain from appellee's father any information as to appellee's whereabouts).

▇▇▇ The excluded testimony, we think, was not subject to the objection made. Although appellee is an heir, judgment could not have been rendered against him "as such." See McKibban et al. v. Scott et al., 131 Tex. 182, 114 S.W.2d 213, 214, 115 A.L.R. 1421. However, after careful consideration of all other evidence pertinent to the question of whether Hughes exercised diligence to obtain service of citation on appellee and, particularly, the admitted testimony that he did make inquiry of the father, seeking to obtain information as to appellee's whereabouts, and that Hughes did not learn where appellee was as a result of that conversation, we conclude that the exclusion of that part of the father's statement, that he didn't know, but thought appellee was in the Amarillo section somewhere, was not reasonably calculated to cause the rendition of an improper judgment. R.C.P. 434. The purpose of the testimony was to show that appellant exercised diligence in attempting to locate appellee. As is apparent from the foregoing, the substance of the excluded testimony relative thereto was admitted. Mr. Hughes testified that on January 20, 1942, he wrote to the tax assessor of Potter County inquiring whether "you have on your 1941 tax rolls the name of E. E. McClatchy, and if so, his address." The tax assessor replied that McClatchy's name was not on said tax roll. Hughes testified that on October 6, 1941, he mailed the first citation to Coleman County, which was returned unserved; that after the citation was returned he went to see appellee's father and asked him where appellee was. The statement as to what the father said which was excluded is "he didn't know, but he thought he was in Amarillo, in that section somewhere." Hughes' testimony was that he made practically the same inquiry of the tax assessors in eleven other counties that he made of the tax assessor of Potter County. He did not send a citation to Potter County. If the excluded evidence that the father "thought he was in Amarillo \* \* \*" had been admitted, the jury might have concluded that Hughes lacked diligence in not sending a citation to Potter County and in failing to make any greater effort to locate appellee in Potter County than he made to locate him in eleven other counties. It occurs to us that Hughes was in a more favorable position before the jury with the admitted testimony, to the effect that he asked the father where appellee was but obtained no information as to his whereabouts, than he would have been had testimony been admitted that he thought he was in Amarillo. We conclude that appellant has not shown reversible

error in this regard. 3-B Tex.Jur., Sec. 1042, page 668; Hicks et al. v. Southwestern Settlement & Development Corporation, Tex.Civ.App., 214 S.W.2d 315, 330 (Writ Ref.); Kroll et al. v. Scott, Tex. Civ.App., 155 S.W.2d 985, 989 (Writ Ref.); Mansell Bros. v. Kruse, Tex.Civ.App., 173 S.W.2d 461, 463; Associated Employers Lloyds v. Cherry, Tex.Civ.App., 232 S.W. 2d 438, 439.

The judgment is affirmed.