## TEXAS PACIFIC COAL & OIL CO. v. SMITH.

### No. 1900.

Court of Civil Appeals of Texas. Eastland.

May 26, 1939.

Rehearing Denied June 23, 1939.

Eugene Adair, of Fort Worth, for appellant.

Ben J. Dean, of Breckenridge, and Yancey, Spillers & Bush, of Tulsa, Okl., for Independent Eastern Torpedo Co.

Thompson, Knight, Baker, Harris & Wright, of Dallas, and J. G. Harrell of Breckenridge, for appellee.

FUNDERBURK, Justice.

C. O. Smith (hereinafter called Smith), in the course of his employment by Texas Pacific Coal & Oil Company (hereinafter called Oil Company), received an injury resulting in the loss of one leg. Texas Pacific Fidelity & Surety Company (hereinafter called Surety Company), the compensation insurance carrier for the Oil Company, admitted its liability and under an agreed award of the Industrial·Accident Board paid him $4,500 in full. .Independent-Eastern ·Torpedo Company (hereinafter called Torpedo Company) reimbursed the Surety Company for the full

amount of compensation insurance paid by the latter to Smith. Such reimbursement was made in pursuance of an agreement by the Torpedo Company to do so if the Surety Company would procure from Smith a transfer or release of his potential cause of action for damages against the Torpedo Company. Such transfer or assignment was executed by Smith to the Surety Company and in turn assigned by the Surety Company to the Torpedo Company.

As a consideration for the transfer by Smith to the Surety Company of his cause of action against the Torpedo Company, the sum of $500 was paid by the Surety Company, and in addition thereto, according to the contention of Smith, but denied by the Oil Company, the latter, acting by C. L. Hightower, agreed to give Smith lifetime employment upon specified terms. As soon after his injuries as Smith was able to resume work, he was given employment by the Oil Company, at which he continued about 5½ years and was discharged.

This suit was brought by Smith against the Oil Company to recover damages for the breach of the alleged contract of lifetime employment. The Torpedo Company was joined as a defendant in a separate count, by which recovery against it was sought in the alternative upon the original cause of action. The Torpedo Company, upon pleas of misjoinder and limitation, was dismissed from the suit, which action we affirm.

In a jury trial the court gave judgment, based upon a special verdict, in favor of the plaintiff against the Oil Company, in the sum of $16,800, from which judgment this appeal has been duly prosecuted by the Oil Company.

▮ Among the contentions of the Oil Company is one that Smith's cause of action was conclusively shown to be barred by limitation. Smith alleged that he was discharged on or about January 31, 1936. The suit, as it was brought on May 4, 1936, described the contract of employment as differing in some of its terms from that described in his second amended original petition (trial pleading), filed February 4, 1938. Invoking the well-known principle ·of law that in an action upon a contract recovery may be had, if at all, only upon proof of the identical contract alleged, the Oil Company argues that since the cause of action for breach of the alleged oral contract of employment

accrued at the time of the alleged discharge of plaintiff, and since more than two years elapsed before the filing of plaintiff's amended petition alleging for the first time material provisions of the contract, the cause of action was, as a matter of ·law, barred by limitation. A complete answer, we think, is that no new or different transaction was described in the amended pleading. Unless the cause of action alleged in an amended pleading involves a different transaction from that in the original pleading, the latter having declared upon a cause of action not then barred, it is immaterial that the cause of action alleged in the amended pleading be different from the cause of action originally alleged. The test which Vernon's Ann.Civ.St. art. 5539b makes proper is whether or not the cause of action alleged in the amended pleading be "wholly based upon and grows out of a new, distinct or different transaction and occurrence." Farmers & Merchants Nat. Bank v. Arrington, Tex.Civ.App., 98 S.W.2d 378, 379; Universal Life & Accident Ins. Co. v. Johnson, Tex.Civ.App., 120 S.W.2d 314.

We shall next consider whether the court should, as requested by the Oil Company, have instructed a verdict in its favor. The proper conclusion upon this question will be controlled, or at least materially influenced, by considering whether the jury in making its findings upon the issues submitted was authorized to regard the Surety Company as the agent or representative of the Oil Company, and to consider the agents and representatives of the Surety Company by reason of such relationship alone, as agents and representatives of the Oil Company.

▮ It was undisputed that the Surety Company was a corporation and the carrier of compensation insurance for the Oil Company. All the stock, except a few shares for the qualification of officers or directors, of the Surety Company, was owned by the Texas Pacific Coal & Oil Company of Delaware, a Delaware corporation. All the stock of the last named corporation, except a few shares for qualifying purposes, was in turn owned by the Oil Company, the defendant, a Texas corporation. Actually, therefore, the Oil Company did not own any stock in the Surety Company. The two corporations had the same officers and directors and a common place of business. It

may be granted that the Oil Company, through ownership of the stock of the foreign holding company, had the *power* to control the Surety Company. In our opinion there was no evidence to establish, or raise an issue of the fact, that the officers or agents of the Surety Company were by reason of their status as such, officers or agents of the Oil Company. The Surety Company was conducting no business in which the Oil Company was engaged, or in which its charter powers permitted it to engage. There was, therefore, no evidence to show that the Surety Company was "but an instrumentality or adjunct" of the Oil Company as the dominant corporation. There was no evidence to support an inference that the organization of the Surety Company was "a mere sham" or used as "an instrument for concealing the truth" or "perpetrating fraud." Under these circumstances, whatever may be said in criticism of the soundness of a governmental policy of empowering corporations to possess such powers of control one over another, as we have recently had occasion to consider, there is, in our opinion, wanting essential elements to make it proper for the jury to decide the question of whether the agents and officers of the Surety Company were the agents and officers of the Oil Company. National Hotel Co. v. Motley, Tex.Civ.App., 123 S.W.2d 461, and authorities therein cited and discussed.

■ C. L. Hightower not being agent of the Oil Company by reason of being an agent of the Surety Company, there was no evidence that he was, in fact, an agent of the Oil Company. Absent evidence that Hightower was an agent of the Oil Company, there was, therefore, no evidence that he had any authority, as the act of the Oil Company, to make the alleged contract of lifetime employment. Smith admits that he had no express authority. If, as we hold, Hightower was not an agent of the Oil Company, then he had neither express nor implied authority to make the contract alleged. Manifestly, in the absence of any relation of principal and agent existing between the Oil Company and Hightower the latter could have no actual authority; and actual authority includes both express and implied authority. Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463, 465, and authorities cited.

■ Smith, in his brief, after conceding that Hightower was not shown by any evidence to have express authority, says that he "believes that the overwhelming evidence supports his contention that although Hightower was not expressly authorized, he, in fact, had implied or apparent authority to make the agreement which was made with the appellee." From what has already been said, it follows that in our view any question of implied authority is foreclosed by the conclusion that there was no evidence to show that Hightower was an agent of the Oil Company. It remains to consider only the question of apparent authority.

■ If there was any evidence to support essential issues of liability, that could be so only because it raised an issue of the fact that Hightower, although not actually an agent of the Oil Company, was an *apparent* or *ostensible* agent. Here, the term "apparent" is not used in a sense synonymous with "implied", as is sometimes done. Continental Oil Co. v. Baxter, supra. In the case cited, we adopted a definition as follows: "An apparent or ostensible agent is one whom the principal either intentionally or by want of ordinary care induces third persons to believe to be his agent although he has not either expressly or by implication conferred authority upon him." Many authorities were cited to the proposition that "When a liability is enforceable because of the 'apparent' or 'ostensible' authority of an agent, having no actual authority, it is upon the principle of an estoppel." Our real question is, therefore, whether there was evidence to raise the issue that the Oil Company was estopped to deny that Hightower had authority to make for it a contract employing Smith for a lifetime term.

■ There was no evidence that the Oil Company had any legal interest in the claim of Smith (1) against the Surety Company for compensation, or (2) against the Torpedo Company for damages. There was no evidence that the $500 paid as all, or a part, of the consideration for the execution of the assignment by Smith of his potential cause of action against the Torpedo Company, to the Surety Company was furnished by, or for, the Oil Company. All relevant facts in evidence viewed in proper relation to each other and the applicable rules and principles of law leave no doubt in our minds that there was a total absence

of evidence of an estoppel based upon a holding out by the Oil Company of Hightower as having authority to make for it a contract of lifetime employment.

Based upon the contingency that he might not be able to establish that Hightower had any actual or apparent authority to make the contract of employment, Smith alleged, in the alternative, a ratification of the contract by the Oil Company. It is doubtful, we think, whether it can be said that the pleadings alleged a ratification based upon the principle of the acceptance of benefits. Whether so or not, there was, we think, a total absence of any evidence of benefits received by the Oil Company. Benefits in such sense must be benefits contemplated by the contract.

We have already pointed out that the Oil Company was not shown to have any interest in the transaction between Smith and the Surety Company by which the latter acknowledged its liability to pay compensation, and paid same, and took from Smith an assignment of his potential cause of action against the Torpedo Company. If that conclusion be correct, then it appears there was a total absence of any consideration moving to or for the Oil Company for the alleged oral agreement in question. When ratification is relied upon, no new consideration need be shown, but that results from the fact that the original consideration is sufficient. Where, however, there is no original consideration, what would otherwise be sufficient to show a ratification would be ineffective for that purpose. It is said that "Since ratification is equivalent to prior authority, the original contract after ratification and by force of the ratification alone becomes the contract of the parties as though it had in the first instance been made by the agent with authority; hence no consideration other than that inuring to the principal from the original contract is necessary to support a ratification. *But there must be an original consideration and if the contract lacks it, a mere ratification will not validate the contract.*" (Italics ours) 2 C.J. 484, sec. 101. That rule seems to us to be applicable here; and, if so, compels the conclusion that there was no ratification.

Further, upon the question of ratification there is some distinction resulting from the fact that Hightower was not an agent of the Oil Company for any purpose, from the situation that would exist if he were an agent and the only question was whether he merely exceeded his authority. "In reference to what acts or conduct will constitute an implied ratification", says Corpus Juris, "a distinction should be made between cases where the person assuming to act as agent did so without authority and cases where there was an actual agency but the agent exceeded the authority conferred, as conduct which in the latter case might be sufficient will not always amount to a ratification in the former." 2 C.J. 489, sec. 108. The reason for this distinction is readily apparent. Where the question is one of whether an agent has exceeded his authority the principal may easily be connected with the consideration for the alleged contract; but where there exists no relation of principal and agent, it is quite a different matter to show the connection of the one sought to be charged, with the consideration for the contract.

We are also of the opinion that there was no evidence to show knowledge to the Oil Company that Smith's employment, after his injury, was in pursuance of the alleged agreement made by Hightower. The evidence did not warrant the inference that notice to Pearsall, if any, was notice to the Oil Company. The fact that Penn, the president of the Company, saw Smith during his employment and could see that he had but one leg, was no notice that his employment was referable to any act of Hightower. The evidence showed conclusively, we think, a custom and practice of the Oil Company to continue the employment of persons who had received, while in its employment, injuries similar to those of Smith. In the light of this custom and practice, the fact that the president of the Company observed that a one-legged man was in its employment could imply no knowledge that he claimed a lifetime employment contract made by one who was without either actual or apparent authority to make same. The Oil Company had a right to make an exception from its rule, if any, to employ only able-bodied persons, in favor of employees injured in its service, but who retained the capacity to discharge services of some value for the Oil Company. This it had a right to do and "ratification cannot be inferred from acts which the principal had a right to do independently of the unauthorized transaction." 2 C.J. 492, sec. 110; Williams v. Moore, 24 Tex.Civ.App. 402, 58 S.W. 953.

It is deemed unnecessary to discuss other questions presented, our conclusion being that the judgment of the court below should be affirmed insofar as it dismissed the Torpedo Company, and should be reversed insofar as it awarded recovery in favor of plaintiff against the Oil Company, and it appearing that the case was fully developed, that judgment should be rendered that Smith take nothing by the suit. It is accordingly so ordered.

### On Motion for Rehearing.

Within the rule that one may be liable upon a contract which he neither made nor authorized, upon the ground of an estoppel or ratification by the acceptance of benefits, we think the benefits are only those contemplated by the contract and not every remote or merely incidental benefit possible to be shown. In all the record, the only benefit to the Oil Company of a transfer of Smith's potential cause of action against the Torpedo Company to the Surety Company which is remotely suggested would be represented by potential dividends to be paid to the Oil Company by the foreign oil company which in turn would be dependent upon a possible enhancement of the amount of dividends to be paid by the Surety Company to the foreign oil company as sole stockholder resulting solely from the reimbursement to the Surety Company by the Torpedo Company of the compensation insurance paid to Smith. That, in our judgment, is not a benefit within the principle of law under consideration.

It is earnestly contended that we are in error in holding that there was a total absence of any consideration moving to or for the Oil Company for the oral agreement of employment in question; hence for that reason, among others, no ratification was shown. Duff v. Ford Motor Co., Tex.Civ.App., 91 S.W.2d 871 and Barnes v. Hobson, Tex.Civ.App., 250 S.W. 238, as also Bass v. Wallace, Tex.Civ.App., 199 S.W. 506, are cited as in point in holding that there need not be an affirmative benefit received by the Oil Company to constitute consideration; but that a detriment to Smith would supply the needed consideration. It is not shown, nor can it be presumed, that Smith gave up any right by transferring his potential cause of action to the Surety Company. Admittedly, he received $500 in cash. His cause of action, if any, against the Torpedo Company was taken away from him by law primarily and only given back conditionally upon the payment of compensation to him; the law creating the Surety Company as his trustee in enforcing his interest, if any, in such cause of action. Texas Employers' Ins. Ass'n., v. Texas & P. R. Co., 129 S. W.2d 746, by this court. The Surety Company would be subrogated to—in fact become the owner of—the cause of action to the full amount of compensation paid. From the standpoint of Smith, the consideration for the transfer of the cause of action was the payment of $500 and the promise of a lifetime job by the Oil Company. He evidently regarded that consideration of equal value to the transferred cause of action. Now, if it so happens that the promisor could not bind the Oil Company by the promise of a lifetime job, it certainly cannot be said that there was consideration for the transfer of the cause of action, other than the $500 and said invalid promise. The consideration, whether as contended by the plaintiff or defendant, was one to which the Oil Company was not a party and as between it and Smith there was no benefit to the Oil Company or detriment to Smith.

It is insisted that we were in error in holding that there was no evidence that the $500, admitted part of the consideration for the transfer of the cause of action, was paid by the Oil Company. It is insisted that the testimony of Smith and his wife raised an issue of fact. Smith, when asked if he knew whose check it was, said: "I am still under the impression it was the Texas Pacific Coal & Oil Company." He was then asked, "Might have been a Texas Pacific Fidelity Insurance check? Answer: It might have been." Mrs. Smith testified: "I was under the impression all these years that it was a Texas Pacific Coal & Oil Company check, although I could be mistaken." As against the clear and convincing evidence that the check was that of the Surety Company and the utter lack of any reason why under any theory a check should have been given by the Oil Company, even if every other contention of Smith should be sustained, we think the above is no evidence to raise an issue of the fact that the Surety Company paid the $500.

The motion is overruled.