**CITY OF HOUSTON, Appellant,**

v.

**Samuel H. MAGNESS, d/b/a Houston Poultry & Egg Company, Appellee.**

**No. 14050.**

Court of Civil Appeals of Texas.

Houston.

Jan. 31, 1963.

Rehearing Denied Feb. 21, 1963.

R. H. Burks, City Atty., Homer T. Bouldin, Senior Asst. City Atty., Houston, for appellant.

Neal & Powell, Geo. D. Neal, Houston, for appellee.

WERLEIN, Justice.

Appellant, City of Houston, brought this suit on May 27, 1959, alleging that during the months of April, May, June, July, August and September, 1958, appellee became indebted to appellant for meat processing fees charged by the City of Houston, Texas, pursuant to Section 27–9, Code of Ordinances, City of Houston, Texas, in the amount of $2,962.83, and that "although demand has been made therefor, Defendant has failed and refuses to pay said balance of $2,962.83 in meat processing fees, and the same is due and unpaid; that such account duly certified, is attached hereto and made a part hereof." Attached to such petition are certified copies of statements for processing fees for said months. Such account does not show what the processing fee was for, but merely the number of pounds processed at $\frac{1}{7}$ of one cent per pound, and the amount due for each month's processing.

On January 13, 1961, appellant filed its first amended original petition alleging:

"That during the months of April, May, June, July, August and September, 1958, Defendant became indebted to Plaintiff for poultry inspection fees charged by the City of Houston, Texas, pursuant to Section 31–2, Code of Ordinances (adopted March 12, 1958), City of Houston, Texas, in the amount of Two Thousand Nine Hundred Sixty-two and $^{83}/_{100}$ ($2,962.83) Dollars.

"That although demand has been made therefor, Defendant has failed

and refuses to pay said balance of $2,-962.83 in poultry inspection fees, and the same is due and unpaid; that such account duly certified is attached hereto and made a part hereof."

Attached to such amended petition is the same identical verified account, showing the amount of processing fees. The prayers in the original petition and the first amended original petition are identical. In such prayers appellant prays for judgment in the sum of $2,962.83, for interest and costs, and for reasonable attorney's fees, and for general relief.

To this amended petition appellee answered by general denial and plea that the alleged cause of action, if any, was barred by the 2 year statute of limitation. The court sustained appellee's plea and decreed that appellant take nothing. The sole question for determination in this case is whether the court erred in sustaining appellee's contention that the debt was barred by the 2 year statute of limitation.

At the request of appellant the trial court, before whom the case was tried without a jury, made its findings of fact and conclusions of law. The court found in substance that on February 28, 1958, under and pursuant to the City of Houston Ordinance No. 3370, governing poultry processing, the City issued to appellee a written permit to operate a poultry processing plant in the City of Houston for the year 1958; that in the months of April, May, June, July, August and September, 1958, pursuant to said Ordinance No. 3370, being the same as Chapter 31, City of Houston Code of Ordinances, 1958 edition, plaintiff did inspect the following quantities of poultry, totalling 2,074,724 pounds under Section 3 of said Ordinances, being the same as Section 31–2 of said Code; that fees in the total amount of $2,962.83 became due for said months, and no part of said indebtedness had been paid; that appellee had never at any time operated or engaged in a meat or meat processing business of any kind; had never operated a meat or meat process-

ing plant of any kind or type within the City of Houston; had never applied for nor had issued to him a permit under Section 27–9 of the City of Houston Code of Ordinances or a processor permit as used in Section 27–11 thereof; that he had never received from the City of Houston any processing or inspection services concerning the killing, preparation and processing of meat, meat foods or meat products; that he had never operated nor engaged in a business or plant included or covered by Chapter 27, City of Houston Code of Ordinances; that Section 27–9, Code of Ordinances, provides for an inspection fee of 10 cents per 100 pounds of processed meat; that Chapter 27 of said Code pertains to "meat" and consists of 124 printed pages of the Code of Ordinances of said City, and meat consists of food products derived from cattle, sheep, swine and goats; that Section 31–2 of the Code of Ordinances, pleaded in appellant's first amended original petition, provides that poultry processors shall pay an inspection fee of $\frac{1}{7}$ of one cent per pound of poultry offered for inspection; and Chapter 31 of said Code, entitled "Poultry Production and Sale," consists of 71 printed pages of said Code; that the cause of action for poultry inspection fees alleged by plaintiff in its first amended original petition is a separate and distinct transaction from the cause of action for meat processing fees alleged by appellant in its original petition with account attached.

The court concluded that the cause of action alleged by appellant in its first amended original petition with account attached was a new, distinct and different transaction and occurrence than that alleged in the original petition, and was barred by the 2 year statute of limitation.

The entire amount of the debt was due on October 16, 1958, more than two years prior to the filing of said amended petition. Dr. Green, the Director of the Meat & Poultry Inspection Division of the City of Houston, testified that a meat processing plant under Chapter 27 and a poultry proc-

essing plant under Chapter 31 of the Ordinances are two entirely separate and different operations; that in an effort to prove up a meat processing fee you would use an entirely different set of facts than you would in proving up a poultry processing fee; and that a poultry inspection fee has nothing whatever to do with a meat processing fee.

In determining whether appellant's claim is barred by limitation, it is necessary, under Art. 5539b, Texas Revised Civil Statutes, to determine whether or not the claim set up in appellant's amended petition is wholly based upon and grows out of a new, distinct or different transaction and occurrence. The original petition hereinabove set out is very meager. In it appellant merely seeks to recover for meat processing fees under Chapter 27 of the *Code of Ordinances of the City of Houston.* The amended petition is equally meager. In it appellant merely seeks to recover for poultry inspection fees under Chapter 31 of the Code of Ordinances. In both the original and amended petitions the parties are the same; the debt sued for is exactly the same amount; the dates or months during which the indebtedness was incurred are the same; the bills or statements attached to each petition are identical; the number of pounds processed as shown in such bills is the same. The bills attached to the petitions merely show "processing fees." It is obvious that such phrase is merely an abbreviation of "inspection fees for processing," since manifestly the City does not do the processing under either ordinance. It will be noted also that the bills are all addressed to Houston Poultry & Egg Company, and that the charge for the City's operations is ⅐ of one cent per pound. This charge is for inspection of poultry processing under the Poultry Ordinance and is not the charge made for meat processing under the "Meat Ordinance."

We think that in all of the foregoing particulars the causes of action set up in both petitions may be identified as the same

except for the fact that in the original petition the meat ordinance and meat processing are alleged, whereas in the amended petition the poultry ordinance and poultry inspections are alleged. In Hallaway v. Thompson, 1950, 148 Tex. 471, 226 S.W.2d 816, our Supreme Court stated:

"The obvious purpose of Article 5539b was to limit the application of the statutes of limitations to amended pleadings. It was evidently intended to modify the previously existing rule for determining whether limitation should apply to an amended pleading, as first announced in Phoenix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S.W. 707. See the comment on a proposed similar statute in the Second Annual Report of the Texas Civil Judicial Council (1930) pp. 17–21, and comments on Article 5539b in 9 Tex.L. Rev. 539; 14 Tex.L.Rev. 400; 15 Tex. L.Rev. 137, 269; 18 Tex.L.Rev. 234. Article 5539b expressly provides that an amendment to a pleading shall not be subject to a plea of limitation where the amendment is not wholly based on or grows out of a new, distinct or different transaction or occurrence."

In the Hallaway case the Supreme Court held, in reversing the District Court and the Court of Civil Appeals, that under Article 5539b, V.A.T.S., the rule could be fairly applied where the amendment named the same defendant but changed the capacity in which he was sued.

In the instant case the only amendment required to harmonize the allegata and probata was to plead by number Chapter 31 of the Code of the Ordinances of the City of Houston in lieu of Chapter 27 of such Code, and to allege that the inspections were of poultry processing instead of meat processing. There was actually only one transaction or occurrence and only one debt since the undisputed evidence shows that appellee at no time engaged in the meat processing business, has no permit to operate under Chapter 27 of the Code of

Ordinances, and had never received any processing or inspection services in connection with the processing of meat.

There can be no question that appellee under such circumstances had knowledge that the charge was made for inspections of poultry processing. He was aware of the claim against him, and the debt he owed. Appellant's first amended original petition, when read together with the bills that were attached thereto, reiterated most of the allegations of the original petition with the bills attached to it. Gray v. Laketon Wheat Growers, Tex.Civ.App., 240 S.W.2d 353; United States v. Johnson, 1961, 5 Cir., 288 F.2d 40.

In First State Bank & Trust Co. of Rio Grande City v. Ramirez, Tex.Com.App., 1939, 133 Tex. 178, 126 S.W.2d 16, 18, the court stated:

"In other words, it is our opinion that where the same debt is sued on in the original petition and subsequent amendments, the mere fact that there is some change in the facts or grounds of liability does not make a distinct or different transaction or occurrence except as to new parties brought in after limitation had run, even though there are several renewal notes, as in this case."

The El Paso Court of Civil Appeals, in Nacim v. Ibarra, writ ref., n. r. e., 310 S. W.2d 388, in speaking of Article 5539b, held:

"This statute was passed in 1931, and it is very clear that it broadened, and was intended to broaden, the rule then in effect, and to prevent the running of limitations after the original suit was filed, as to all amended pleadings growing, in whole or in part, out of the same 'transaction and occurrence.' "

In 54 C.J.S. Limitations of Actions § 280, p. 328, it is stated:

"It has been asserted that courts should be liberal in allowing amendments to save a case from the statute of limitations when the cause of action is not totally changed, and that especially should a liberal rule be applied in respect of amendments when a defendant has had notice from the beginning that plaintiff is setting up and trying to enforce a claim against him because of specified conduct, since the reasons for the statute of limitations do not exist in such case."

After much deliberation, we have concluded that the amendment is not wholly based upon and does not grow out of a new, distinct or different transaction and occurrence. Since the case has not been fully developed, the judgment of the trial court will be reversed and the cause remanded.

Reversed and remanded.