**O. P. LEONARD, Petitioner,**

v.

**TEXACO, INC., Respondent.**

**No. B-87.**

Supreme Court of Texas.

June 14, 1967.

Rehearing Denied Oct. 4, 1967.

R. E. Swift, Palestine, Garrett & Stahala, Robert Stahala, Fort Worth, for petitioner.

Bob Reeves, Palestine, William S. Clarke, Houston, for respondent.

NORVELL, Justice.

This case involves a limitation problem. The action is one for damages by a surface owner against the mineral lessee allegedly growing out of seismic operations on the lease. Texaco, Inc., defendant in the trial court and respondent here, contends that the action was barred by the two year statute of limitations. Article 5526 [1] reads in part as follows:

> "There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

> "1. Actions of trespass for injury done to the estate or the property of another. * * *"

O. P. Leonard, the plaintiff in the trial court and petitioner here, takes the position that the statute was tolled for a few days by agreement of the parties so that his petition was filed within the prescribed statutory period and that a subsequent amendment of the petition was embraced by Article 5539b which provides:

> "Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-ac-

---

1. Article references are to Vernon's Ann.Tex.Stats.

tion, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, upon application of the opposite party, the court may postpone or continue the case as justice may require."

The trial court gave judgment for plaintiff but the Court of Civil Appeals reversed upon a holding that the amendment to Leonard's petition did not come within the provisions of said Article 5539b. 409 S.W.2d 901. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

Leonard, the surface owner of approximately 12,000 acres of land in Anderson County, Texas, sued Texaco, the holder of an oil, gas and mineral lease covering the tract, claiming that his cattle, fences, roads and road crossing had been injured or damaged by Texaco's seismic operations. Such damages were alleged to have been suffered in the year 1959, and Leonard filed suit on July 6, 1961. The Court of Civil Appeals held that the cause of action alleged in his original petition was not barred by the two year statute of limitations. We agree with this holding. (Texaco asserts that this holding is erroneous and such contention will be discussed by us in reviewing the points of error contained in Texaco's brief in the Court of Civil Appeals.) That court, however, held that as the original petition set up a claim in tort and the subsequent amendments thereto filed in 1964 and 1965 asserted a claim in contract, Article 5539b did not operate to save the cause of action based upon contract from the bar of the two year statute.

Leonard's original petition asserted that Texaco had made an excessive and unreasonable use of the surface estate in conducting its seismic operations. By a 1964 amendment and a trial amendment thereto filed on March 8, 1965, Leonard retained the charge that Texaco had made an unreasonable and excessive use of the surface but also alleged that Texaco had contracted and agreed to pay all damages resulting to the surface as a result of its exploratory operations. The case was submitted upon the contract theory of liability and the jury found that prior to the time Texaco began its seismic operations, it agreed with Leonard to pay all damages to his property that might be caused by such operations and that Leonard had been damaged in a number of particulars aggregating the sum of $3,998.00.

The holding of the Court of Civil Appeals that the contract action asserted by Leonard in his trial pleadings was barred by limitation is based upon the circumstance that while the original petition sounded in tort,—unreasonable and unnecessary use, the amended petition was based upon an agreement to pay damages. In other words, the Court of Civil Appeals followed the "cause of action" concept in applying Article 5539b to this case and concluded that although a cause of action in tort had been declared upon within the statutory limitation period, this would not save from the bar of limitations a cause of action based on contract which was first pleaded long after two years had expired from the date the damages were allegedly sustained.

The Court of Civil Appeals relied primarily upon Hopper v. Hargrove, 154 S.W. 2d 978 (Tex.Civ.App.1941, writ ref'd), which followed Phoenix Lumber Company v. Houston Water Company, 94 Tex. 456, 61 S.W. 707 (1901), a case decided before 1931 when Article 5539b was adopted. See, Acts 1931, 42nd Leg., p. 194, ch. 115. In *Hopper,* it appeared that the plaintiff by an amended petition sought recovery of

a tract of land not mentioned in her previous petitions. The Court of Civil Appeals held that Article 5539b did not operate to avoid the bar of limitation. While the holding might be justified upon other grounds, the opinion cited the Phoenix Lumber Company case and stated that it was "clear that the third amended original petition declares upon a *new cause of action* in so far as the land in controversy is concerned." (Emphasis added.)

In Global Corporation v. Vincent, 156 Tex. 398, 295 S.W.2d 640 (1956), this Court quoted with approval the following from Texas Pacific Coal & Oil Co. v. Smith, 130 S.W.2d 425 (Tex.Civ.App.1939, writ dis'm judgm. cor.):

"Unless the cause of action alleged in an amended pleading involves a different transaction from that in the original pleading, the latter having declared upon a cause of action not then barred, it is immaterial that the cause of action alleged in the amended pleading be different from the cause of action originally alleged. The test which Vernon's Ann.Civ.St. art. 5539b makes proper is whether or not the cause of action alleged in the amended pleading be 'wholly based upon and grows out of a new, distinct or different transaction and occurrence.' Farmers & Merchants Nat. Bank v. Arrington, Tex.Civ.App., 98 S.W.2d 378, 379; Universal Life & Accident Ins. Co. v. Johnson, Tex.Civ.App., 120 S.W.2d 314."

The emergency clause of the 1931 act referred to "the importance of simplifying Court procedure" and evinced an intention to effect some change in the law as it theretofore existed.

In Hallaway v. Thompson, 148 Tex. 471, 226 S.W.2d 816 (1950), we said:

"The obvious purpose of Article 5539b was to limit the application of the statutes of limitations to amended pleadings. It was evidently intended to modify the previously existing rule for determining whether limitation should apply to an amended pleading, as first announced in Phoenix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S.W. 707. * * * Article 5539b expressly provides that an amendment to a pleading shall not be subject to a plea of limitation where the amendment is not wholly based on or grows out of a new, distinct or different transaction or occurrence."

See also, First State Bank & Trust Co. of Rio Grande City v. Ramirez, 133 Tex. 178, 126 S.W.2d 16 (1939); City of Houston v. Magness, 364 S.W.2d 702 (Tex.Civ.App. 1963, writ ref'd).

■ The test under Article 5539b as amended in 1931 is no longer based upon a difference in causes of action declared upon in the original and amended petitions and the expressions contained in Hopper v. Hargrove, supra, indicating the contrary must be disapproved. The test is whether the cause of action alleged in the amended petition is "wholly based upon and grows out of a new, distinct or different transaction and occurrence."

■ In this particular case, while the original petition sounded in tort and alleged an excessive use of the land, and the amended petition set up a promise to pay such damages as Texaco might cause to the surface estate through its seismic operations, it cannot be said that a petition setting up the agreement to pay stated a cause of action wholly based upon and growing out of a different transaction or occurrence. In fact, the difference in the tort and contract actions in the present case would have little practical effect so far as trial preparation is concerned.

When Texaco notified Leonard that it intended to conduct exploratory operations, Leonard protested that the land was wet— "just as wet as a frog," due to recent rains. He wanted Texaco to stay off the premises until they dried up. "I didn't want them in there tearing up the country with that heavy equipment they use for seismograph-

ing." Discussions were had in regard to paying Leonard $1,000.00 for surface damage, which he refused, and One Dollar per acre, which Texaco refused. Finally, according to Leonard, a Texaco representative stated that they were going ahead with their seismic operations but would pay Leonard for damages to the surface. This agreement was later partially confirmed by letter. The seismic operations undertaken by Texaco over the protests of Leonard based upon the wetness of the ground and consequent greater damage to the premises was the transaction or occurrence out of which grew both the claim in tort and the claim in contract.

■ We hold that as the original cause of action declared upon in the original petition filed on July 6, 1961 was not barred by the two year statute, the cause of action alleged in the amended petition filed in 1964 and the trial amendment thereto, was not barred by the two year statute because of the provisions of Article 5539b.

■ As heretofore indicated, Texaco presented the contention in the Court of Civil Appeals that Leonard's cause of action was barred by the two year statute when his original petition was filed. While the Court of Civil Appeals did not agree with defendant's position, the sustaining of this position would result in an affirmance of the judgment of the Court of Civil Appeals that Leonard take nothing. Accordingly, we review this contention as well as all others asserted by Texaco in the Court of Civil Appeals which, if sustained, would result in an affirmance of the judgment of that court. Bildon Farms, Inc. v. Ward County Water Imp. Dist. No. 2, 415 S.W.2d 890 (Tex.Sup.1967).

Texaco argues that the evidence shows that ruts were cut on Leonard's roads and lands on or before June 3, 1959 and that all seismic operations had been completed by June 29, 1959. As heretofore stated, Leonard's original petition was filed on July 6, 1961. Whether the action was barred or not depends upon an agreement between Robert Stahala, Leonard's attorney, and Jim N. Inglish, a member of Texaco's legal department. On May 19, 1961, Inglish wrote Stahala concerning Leonard's claim for damages. This letter in part reads as follows:

"This is to advise, as outlined in our telephone conversation of today, the period of time between the date of your letter, May 16, 1961, and the date we will again contact you regarding your claim, will not be counted as time transpired since the seismic work took place, this with reference to the period of limitation.

"As further discussed on the phone, we will proceed with our investigation and telephone you the early part of next week in order to set a time to meet with you and discuss the possibility of an agreed settlement."

On May 30th, Leonard's attorney wrote Inglish and mentioned a "conversation of last Wednesday morning" (May 24th). In this letter he mentioned June 3rd as a possible meeting date. Eventually the lawyers met in Fort Worth on June 19th, but after considerable discussion were unable to reach an agreement with the result that suit was filed on July 6th.

Texaco contends that Inglish "contacted" Stahala by telephone May 24, 1961, and therefore limitation was tolled for only nine days. Leonard, on the other hand, argues that the clear sense of Inglish's letter of May 19th was that at some time in the near future, the parties would meet, discuss the situation and attempt to arrive at a settlement. Such meeting did not take place until June 19th and therefore the statute was tolled for a period of some 34 days.

■ We are in agreement with the Court of Civil Appeals and the plaintiff on this point. The use of the word "contact" in the sense employed in the letter is of recent origin; and in writings of a business or legal nature it occupied the position of a wayward expression of uncertain antecedents with

slight hopes of obtaining a respectable place in the English language. However, as used in the context of the letter, it is clear that a meeting of the parties or their representatives, and a substantial dialogue looking toward a settlement of differences, was intended. The action asserted in the original petition was not barred on July 6, 1961 when said petition was filed.

■ The other points in Texaco's brief in the Court of Civil Appeals which if sustained would result in an affirmance of the judgment of that court are those asserting that the trial court erred in not granting a judgment non obstante veredicto. By such points it is contended that there is "no evidence" supporting the jury's finding that prior to the time the seismic operations began, Texaco agreed to pay Leonard such damages as would be sustained by him (Leonard) by its exploratory operations; that it conclusively appears that W. I. King, a district land man for Texaco, was not authorized to make an agreement binding Texaco to pay damages, and, in the alternative, any agreement to pay damages would be without consideration. In our opinion, none of these points is well taken; and although the briefs of the parties in the Court of Civil Appeals contain extended discussions of the testimony adduced at the trial, an extended treatment of factual details of the evidence by us would be of small benefit to anyone. Special Issue No. 1 inquired if Texaco made an agreement to pay. The evidence shows that if such agreement or promise was made it was made by W. I. King. No objection to Special Issue No. 1 was made on the ground that it did not inquire as to which individual made the agreement on behalf of the oil company. No inquiry was submitted as to King's authority. Leonard testified that the agreement was made. As heretofore indicated, there was evidence that King acting on behalf of Texaco had entered into negotiations with Leonard and had offered him $1,000.00 which was refused. King testified that he was authorized by "management" to make the $1,000.00 offer and reference to such offer by King was subsequently alluded to in a letter from the Texaco land department to Leonard. It also appears that King had refused Leonard's counter offer of $1.00 per acre as damages. King's evident purpose was to negotiate some sort of a settlement with Leonard. We cannot say either that there was no evidence that a promise to pay was made or that it conclusively appears that King was not authorized to make such promise. See, e. g., Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962); Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273.

■ With reference to the contention that there was a failure of consideration, it appears that Texaco was threatening to and did enter upon the land under circumstances which would entail unusual damage to the surface because of the wetness of the ground. It was essential to Texaco's seismic work that use be made of roads and bridges specially constructed by Leonard for a more efficient use of his ranch. Of course, Texaco as the holder of mineral estate had certain rights with reference to the surface, but it did not have the right to make an unreasonable use thereof. A dispute had arisen between Leonard and Texaco. Leonard testified that he recognized that Texaco had certain rights to the surface and considering Texaco's promise to pay which he said was made by King, he decided he would not institute legal proceedings. The promise to pay which the jury found to exist was supported by a consideration. Compare Union Producing Co. v. Allen, 297 S.W.2d 867, 1. c. 870 (Tex.Civ.App.1957, no writ).

■ We are further of the opinion that there was *some* evidence supporting the various items of damages found by the jury. Johnny Titlow, Leonard's ranch foreman, testified that he kept a day by day record of the seismograph crew's operations upon the premises. His record is replete with statements as to the wetness of the soil because of recent rains and damage to roads and the surface of the ground occasioned by the use of heavy

equipment thereon. For example, some of these items were as follows:

"June 23rd—Car and pickup came and went back, too wet.

"June 24th—Two cars and pickup came, they took a Ford tractor, went up to the west pasture, got a Cat (Caterpillar tractor) and one truck. The Cat had to pull the truck all the way out, when they had to get in the road, they sure did play hell with it.

"June 25th—They worked all day in the mud. The Cat had to drag two trucks all the time, he had to drag all four trucks out that evening in the rain. They sure did ruin the roads."

Titlow also testified that a fence to a pasture was cut while the seismic crew were working on the land and a number of cattle escaped. There was also evidence that as a result of the damage to roads and other parts of the surface of the ranch, the cutting of deep ruts in the soil by heavy equipment, Leonard's access to various portions of the ranch was severely limited with resulting damage to cattle which he had on the place. There was evidence of substantial damages. We overrule Texaco's "no evidence" points.

What has been said disposes of this appeal. The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

WALKER, J., not sitting.

On Rehearing

NORVELL, Justice.

In view of Texaco's renewed contention that the agreement between Texaco and Leonard as found by the jury was not based upon a valid consideration, we state certain additional facts disclosed by the record. The want of consideration issue is somewhat more narrow than might be inferred from a reading of the original opinion. It is undisputed that Leonard had constructed a number of roads and bridges upon his 12,000 acre ranch so as to make the various parts thereof more accessible and suitable for efficient operations. The oil and gas lease under which Texaco holds gave it the right to make a reasonable use of the surface for mineral exploratory and production purposes, but it is not contended that Texaco had the right to use the improvements placed upon the ranch for transporting the heavy equipment used by it in its seismic operations. Texaco expected to pay for all damages sustained by Leonard's roads and bridges. The real issue between the parties relates to the actual terms of the contract made by the parties. By agreement with Leonard, Texaco used Leonard's roads and bridges. Texaco contends that said agreement bound it to pay for damage to *the roads and bridges used by it* and no more. Leonard contends that in return for Texaco's use of such roads and bridges and in settlement of the dispute which had arisen between the parties, Texaco agreed to pay *all* damages that might be sustained by Leonard resulting from Texaco's seismic operations.

Leonard testified that during the month of May 1959, he and King held a conference in Fort Worth, Texas, and at that time King's offer to pay $1,000.00 and Leonard's counter offer to accept one dollar per acre as damages were made and rejected. He also testified that after a failure to agree upon a definite amount for damages to be paid Leonard, King promised that they (Texaco) "would pay for the damages, whatever was done"; that King said they were going ahead and do the work and if they did any damage they would pay for it. The jury found in accordance with Leonard's testimony.

After this Fort Worth conversation, Mr. Lavon Gunter, acting for Texaco, wrote to Leonard specifically mentioning damages to roads, bridges, gates and cattle guards. In reply thereto, Leonard stated that he would "expect damages wherever same occurs." This position was consistent with

his claim of an agreement to pay whatever damages might result from Texaco's operations. We conclude that the agreement as found by the jury was based upon a valuable consideration. James v. Fulcrod, 5 Tex. 512 (1851); Hunter v. Lanius, 82 Tex. 677, 18 S.W. 201 (1892); 13 Tex.Jur. 2d 194, Contracts, § 56.

Texaco's motion for rehearing is overruled.