TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00148-CV







Albertsons, Inc., Appellant



v.



JTM Materials, Inc. and Steven Shuttleworth, Appellees







FROM THE 146TH COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 169642-B, HONORABLE RICK MORRIS, JUDGE PRESIDING







 Appellant Albertsons, Inc. sued appellees JTM Materials, Inc., and Steven
Shuttleworth to recover profits lost by its grocery store on West Adams Street in Temple. From
a summary judgment rendered for JTM and Shuttleworth, Albertsons appeals. We will affirm the
trial court's judgment.

 On March 16, 1996, Shuttleworth was driving a tractor-trailer owned by JTM when
he hit the Adams Street overpass on Interstate Highway 35. The damage to the overpass caused
it to be closed to traffic for a year. On April 23, 1998, Albertsons sued JTM and Shuttleworth
for negligence and negligence per se, claiming that the closing restricted access to the Albertsons
grocery store on West Adams Street and caused it to lose profits approaching $1,000,000. In
response to JTM and Shuttleworth's affirmative defense of limitations, Albertsons pleaded that
JTM and Shuttleworth were equitably estopped from relying on the statute of limitations. JTM
and Shuttleworth sought summary judgment on grounds that the two-year statute of limitations
barred Albertsons' suit and that Albertsons could not escape the bar of limitations by relying on
equitable estoppel. The trial court granted the summary judgment motion in its entirety.

 In issue one, Albertsons asserts that the trial court erred in rendering summary
judgment on the basis of equitable estoppel.(1) A plaintiff such as Albertsons can invoke equitable
estoppel to prevent its opponent from pleading limitations if the opponent, its agent, or its
representative makes representations that induce the plaintiff to delay filing suit within the
limitations period. Cook v. Smith, 673 S.W.2d 232, 235 (Tex. App.--Dallas 1984, writ ref'd
n.r.e.). An adjuster acting for an insurance company can be considered to be the agent of the
insured so as to estop the insured from setting up a statute of limitations. Id. To establish
equitable estoppel at a trial on the merits, Albertsons would have the burden to prove (1) a false
representation or concealment of material facts, (2) made with knowledge, actual or constructive,
of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge,
or the means of knowledge of those facts, (5) who detrimentally relied on the misrepresentation. 
Gulbenkian v. Penn, 252 S.W.2d 929, 932 (Tex. 1952).

 On the ground of equitable estoppel, JTM and Shuttleworth sought both a traditional
and a no-evidence summary judgment. See Tex. R. Civ. P. 166a(c), (i). Because the trial court
granted JTM and Shuttleworth's motion in its entirety, this Court can uphold the trial court's
judgment on either basis. Barraza v. Eureka Co., 25 S.W.3d 225, 231 (Tex. App.--El Paso 2000,
pet. denied). We will review first the propriety of the no-evidence basis for summary judgment.

 The grant of a no-evidence summary judgment invokes the same standard of review
as that of a directed verdict. Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex. App.--Austin
1998, no pet.). A no-evidence summary judgment is properly granted if the nonmovant fails to
bring forth more than a scintilla of evidence raising a genuine issue of material fact. Id. at 70-71. 
If the nonmovant's evidence is so weak as to create no more than a surmise or suspicion of a fact,
the legal effect is that of no evidence. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983). The appellate court must review all the evidence in the light most favorable to the
nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's
favor. Jackson, 979 S.W.2d at 70.

 We turn to the first element of equitable estoppel, the existence of a false
representation or concealment of material facts. Albertsons asserted in its summary judgment
response that the adjuster for JTM's insurer made false representations in three ways: (1) by
representing that damages would be paid when the adjuster did not intend to pay anything, (2) by
concealing that the insurer, Zurich American Insurance Company, had denied liability for
Albertsons' claim, and (3) by concealing that Zurich's settlement offer would expire with the
limitations period. In each case, according to Albertsons, the misrepresentation was made to delay
Albertsons from filing suit.

 The evidence in favor of Albertsons on the issue of equitable estoppel is contained
in the affidavit of one of Albertsons' legal assistants, Cheryl Post. Post testified that she worked
in the office of general counsel for Albertsons and was actively involved in the submission of
Albertsons' claim to JTM's insurer. She stated that Albertsons sent its demand for coverage to
Zurich by letter dated September 26, 1996. After Zurich received the demand letter, Post and
Zurich's representative discussed the documents Zurich would need to evaluate Albertsons' claim. 
Post provided the documentation Zurich required on March 13, 1997. In August 1997, Zurich
referred the claim to an accounting firm, Kinsel Accountancy, to evaluate the economic loss. By
October 1997, Post provided all documents that Kinsel had requested.

 On February 17, 1998, Post received a letter from Zurich transferring Kinsel's
attached report and asking Post to contact Zurich following her review. Kinsel prefaced its report
by stating that it had reviewed Albertsons' records to help Zurich determine the extent of loss
resulting from the damage to the interstate overpass. Kinsel stated that damage to the overpass
made access to Albertsons' grocery store more difficult and that Kinsel calculated a loss of profits
totalling $167,950 over one year.

 Post testified that Albertsons interpreted the letter and attached report to be an
acknowledgment by Zurich of liability for the claim and a counteroffer of $167,950 to Albertsons'
original $600,000 demand. Relying on the implicit acknowledgment that Albertsons' claim was
legitimate, and because Zurich had stated no deadline for the counteroffer, Albertsons did not
respond to Zurich until March 31, 1998, about two weeks after the statute of limitations had run. 
Post stated that Albertsons could not respond earlier because Zurich's delays in responding meant
that Albertsons received the February letter when its Finance Department was occupied with
annual financial reports and SEC filings, as well as several acquisitions. Had Albertsons known
that Zurich would take advantage of the running of the statute of limitations then, or had the
counteroffer stated that it would expire on March 16, 1998, Albertsons would have taken steps to
preserve its claim and respond sooner. Post declined to accept Kinsel's estimate of $167,950 in
lost profits and raised Albertsons' demand to $1,000,000.

 On April 15, 1998, Zurich responded to Albertsons' counteroffer, stating that
before it evaluated Albertsons' claim further, it wished to know whether Albertsons had filed suit
to toll the two-year statute of limitations. Post immediately retained counsel, and Albertsons sued
JTM and Shuttleworth on April 23, 1998.

 The circumstances giving rise to claims of equitable estoppel in Texas cases fall
along a continuum. At one end, a person who expressly commits to disregard a statute of
limitations may be estopped to claim limitations as a defense. Frank v. Bradshaw, 920 S.W.2d
699, 702-03 (Tex. App.--Houston [1st Dist.] 1996, no writ); Cook, 673 S.W.2d at 235; see
Leonard v. Texaco , Inc., 422 S.W.2d 160, 164-65 (Tex. 1967). In Frank, for example, the
adjuster for the defendants' insurance company assured one plaintiff that her medical bills would
be paid regardless of the statute of limitations. 920 S.W.2d at 700-01. No such express
representation was made here.

 At the other end of the continuum, the mere exchange of information between
potential litigants does not suspend the running of limitations or estop a litigant from asserting it
as a defense. See Phillips v. Sharpstown Gen. Hosp., 664 S.W.2d 162, 168 (Tex. App.--Houston
[1st Dist.] 1983, no writ). Until Zurich sent Kinsel's report to Albertsons, Post and Zurich were
involved in nothing more than exchanging information about Albertsons' claim. As Albertsons
stated in its summary judgment response, all communications were directed to whether Albertsons
could substantiate damages and if so, how much.

 Even settlement negotiations themselves, absent fraud or bad faith, do not estop a
defendant from asserting the statute of limitations. Lockard v. Deitch, 855 S.W.2d 104, 106 (Tex.
App.--Corpus Christi 1993, no writ). Albertsons contended in its summary judgment response
that Zurich took over sixteen months from Albertsons' initial demand to respond, and that when
it responded, Zurich submitted a report that in no uncertain terms acknowledged that Albertsons
had substantiated damages of over $160,000. Albertsons argued that this response effectively
constituted an offer or, at the least, an acknowledgment that Zurich would pay an amount of
Albertsons' damages, but did not indicate that the offer would expire at a given time.

 Zurich's determination that Albertsons sustained quantifiable damage, however,
does not equate to a determination that Albertsons' damage was covered under JTM's insurance
policy. Zurich's request in the letter accompanying Kinsel's report that Post contact it is
consistent, not with a settlement offer, but with an invitation to begin settlement negotiations. 
Further, Kinsel, an accounting firm, would not be a reliable entity to construe whether the
insurance policy covered Albertsons' loss. That Zurich took sixteen months to respond to
Albertsons' claim, without more, does not raise a fact issue on whether Zurich acted fraudulently
or in bad faith.

 We conclude that Albertsons presented no evidence that Zurich misrepresented that
damages would be paid, concealed the fact that it denied liability but delayed its response to deter
Albertsons from filing suit, or concealed the fact that its settlement offer would expire within the
limitations period. Because Albertsons failed to raise a fact issue on the first element of equitable
estoppel, it has not shown that the no-evidence summary judgment was improper. We overrule
issue one. Because the judgment can be supported on no-evidence grounds, we need not address
Albertsons' challenge to the traditional summary judgment in issue three.

 In its second issue, Albertsons contends that the trial court erred in giving Post's
deposition testimony controlling effect over her affidavit. We have reviewed both the deposition
and the affidavit. The deposition conflicts with the affidavit in some respects, and it is generally
less favorable to Albertsons than the affidavit. We have therefore focused on the evidence most
favorable to Albertsons, that contained in the affidavit. Considering the evidence in the light most
favorable to Albertsons, we have not found the presence of a fact issue. We therefore overrule
issue two.

 Having determined that the court properly granted summary judgment on no-evidence grounds, we affirm the judgment of the trial court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Marilyn Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: January 19, 2001

Do Not Publish


1. JTM and Shuttleworth sought summary judgment on the following related three grounds:
(1) the statute of limitations bars Albertsons' suit, (2) the discovery rule does not apply to
Albertsons' causes, and (3) Albertsons is not entitled to rely on equitable estoppel to avoid
limitations. On appeal, Albertsons challenges only the third prong. Because we must presume that
the trial court granted summary judgment based upon all three grounds, Albertsons is entitled to
a reversal if it shows that the trial court erroneously rendered judgment on the ground of equitable
estoppel.


o disregard a statute of
limitations may be estopped to claim limitations as a defense. Frank v. Bradshaw, 920 S.W.2d
699, 702-03 (Tex. App.--Houston [1st Dist.] 1996, no writ); Cook, 673 S.W.2d at 235; see
Leonard v. Texaco , Inc., 422 S.W.2d 160, 164-65 (Tex. 1967). In Frank, for example, the
adjuster for the defendants' insurance company assured one plaintiff that her medical bills would
be paid regardless of the statute of limitations. 920 S.W.2d at 700-01. No such express
representation was made here.

 At the other end of the continuum, the mere exchange of information between
potential litigants does not suspend the running of limitations or estop a litigant from asserting it
as a defense. See Phillips v. Sharpstown Gen. Hosp., 664 S.W.2d 162, 168 (Tex. App.--Houston
[1st Dist.] 1983, no writ). Until Zurich sent Kinsel's report to Albertsons, Post and Zurich were
involved in nothing more than exchanging information about Albertsons' claim. As Albertsons
stated in its summary judgment response, all communications were directed to whether Albertsons
could substantiate damages and if so, how much.

 Even settlement negotiations themselves, absent fraud or bad faith, do not estop a
defendant from asserting the statute of limitations. Lockard v. Deitch, 855 S.W.2d 104, 106 (Tex.
App.--Corpus Christi 1993, no writ