Affirmed in Part, and Reversed and Remanded in Part and Opinion Filed
August 24, 2006








Affirmed in Part, and Reversed and Remanded in Part and Opinion
Filed August 24, 2006

 

 

In The 

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00128-CV

____________

 

MICHELLE RIVERA AND JEFF RIVERA, Appellants

 

V.

 

SOUTH GREEN LIMITED PARTNERSHIP AND
KASTLE SYSTEMS OF TEXAS, L.L.C., Appellees

 



 

On Appeal from the 270th
District Court

Harris County, Texas

Trial Court Cause No. 03-30395

 



 

O P I N I O N








This is a premises-liability case in which an employee was
assaulted in the workplace.  Appellants, the employee and her husband,
challenge the trial court=s summary judgment in favor of the
building owner and its security company.  We conclude the trial court erred in
granting summary judgment in favor of the building owner, but that it ruled
correctly as to the security company.  Therefore, we affirm the trial court=s judgment in
favor of the security company, but reverse the trial court=s judgment as to
the negligence/premises liability claim against the building owner and remand
that claim to the trial court further proceedings consistent with this opinion.


I.  Factual and Procedural
Background

On Saturday morning, September 15, 2001, Michelle Rivera
went to her place of employment at Hope Star Orthopedic Facility, a medical
facility located at 12700 North Featherwood Drive in Houston, Texas.  She
arrived around 8:30 a.m., went to her office, and began transcribing medical
notes.  Around 2:00 p.m. that afternoon, while working alone, a male unknown to
her entered her office, came up behind her, and placed a sharp knife to her
throat.  The assailant demanded her money and jewelry.  After taking the money
from her purse, he led Rivera out of the office to the bathroom, and forced her
to remove her clothing while he watched.  When Rivera had disrobed, the
assailant grabbed her clothes off the floor and knocked her unconscious.  The
assailant then fled, throwing Rivera=s undergarments in
a garbage can outside her office as he left.  Rivera awoke later lying on the
bathroom floor, badly beaten, and in a pool of her own blood.  Her husband,
Jeff Rivera, arrived at the building shortly thereafter, and took her to the
hospital for treatment.








As a result of this incident, the Riveras filed this suit
against South Green Limited Partnership (ASouth Green@), O=Connell Realty
Advisors, Inc. (AO=Connell Realty@), and Kastle
System of Texas, L.L.C. (AKastle@).  The Riveras
alleged that, at the time of the assault, South Green owned the property on
which the Hope Star Orthopedic Facililty was located, O=Connell Realty
maintained and operated the property, and Kastle provided security for the
property.  The Riveras asserted various claims for fraud, constructive fraud,
negligent misrepresentation, violations of the Texas Deceptive Trade Practices
Consumer Protection Act (ADTPA@), negligence,
gross negligence, breach of contract, and breach of warranty.  South Green, O=Connell Realty,
and Kastle filed traditional and no-evidence motions for summary judgment on
all claims.  The trial court granted summary judgment in favor of all
defendants on all claims.  See  Tex.
R. Civ. P. 166a(c), (i).[1] 
The Riveras now appeal the trial court=s judgment in
favor of South Green (the building owner) and Kastle (the security company). 

II.  Issues Presented

As to South Green and Kastle,[2] 
the Riveras assert the following issues on appeal: 

(1)     Did the trial court err in granting South
Green=s traditional motion for summary
judgment on the duty element of the negligence claim?

(2)     Did the trial court err in granting South
Green=s no-evidence motion for summary
judgment on the breach-of-duty element of the negligence claim?

(3)     Did the trial court err in granting both
South Green=s and Kastle=s no-evidence motions for summary
judgment on the DTPA claims?

(4)     Did the trial court err in granting Kastle=s no-evidence motion for summary
judgment on the Riveras= third-party-beneficiary-breach-of
contract claim?

 

III. Standard of Review 

 








We review a traditional motion for
summary judgment by determining whether the movant carried its burden of
showing that there is no genuine issue of material fact and that judgment
should be granted as a matter of law.  KPMG Peat Marwick v. Harrison County
Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex.1999).  To prevail on a
traditional summary-judgment motion, a defendant must conclusively negate at
least one essential element of each of the plaintiff=s causes of action or conclusively
establish each element of an affirmative defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex.1997).  Under this standard, we take as
true all evidence favorable to the nonmovant, and we make all reasonable
inferences in the nonmovant=s favor.  Dolcefino v. Randolph, 19 S.W.3d 906, 916
(Tex. App.CHouston [14th Dist.] 2000, pet. denied).  If the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.   Id. 

In reviewing a
no-evidence motion for summary judgment, we ascertain whether the nonmovant
pointed out summary-judgment evidence of probative force to raise a genuine
issue of fact as to the essential elements attacked in the no-evidence motion.  Id.;
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 206B08 (Tex. 2002). 
We take as true all evidence favorable to the nonmovant, and we make all
reasonable inferences therefrom in the nonmovant=s favor.  Dolcefino,
19 S.W.3d at 916.  A no-evidence motion for summary judgment must be granted if
the party opposing the motion does not respond with competent summary-judgment
evidence that raises a genuine issue of material fact.  Id. at 917. 

IV. Analysis

A.      Did the trial court err in
granting South Green=s traditional motion for summary judgment on the duty
element of the Riveras= negligence claim?

 

In their first
issue, the Riveras contend that the trial court erred in granting South Green=s traditional
motion for summary judgment on the duty element of their negligence claim
because they raised a genuine issue of material fact on this element.








In a typical negligence case, a
plaintiff will prevail only if she can establish that the defendant owed her a
duty of care that was breached as a result of the defendant=s acts or omissions and that the type
of harm that resulted from those acts or omissions was caused by and reasonably
foreseeable by the defendant.  See Allen v. Connolly, 158 S.W.3d 61, 65
(Tex. App.CHouston [14 Dist.]2005, no pet.).  The Riveras= arguments at trial, and on appeal,
center on foreseeability and the existence of a legal duty, if any.  

In their ASecond Amended
Petition,@ the Riveras asserted, as to their negligence  claim,
that South Green owed Michelle Rivera a duty to exercise ordinary care to keep
the premises in a reasonably safe condition, and to make safe any defects, or
give an adequate warning of any dangers to its invitees.  The Riveras
specifically pleaded that South Green, by and through its agents, servants, and
employees, knew or should have known the following: 

(1)     Hope Star Orthopedic was
located in a high-crime area. 

(2)     Previous crimes had
occurred on and near the premises. 

(3)     Criminal activities were
occurring or likely to occur at or in the general vicinity of the premises
owned and operated by South Green.

(4)     The condition on the
premises created an unreasonable risk of harm to invitees.

(5)     Customers and employees
possibly could be injured. 

 

In response, South
Green filed a motion for summary judgment asserting in a traditional ground
that South Green was entitled to summary judgment as a matter of law on the
Riveras= negligence claim
because South Green did not owe a duty of ordinary care to the Riveras.  More
specifically, South Green argued that the injuries Michelle Rivera sustained
were unforseeable. South Green also challenged the Riveras= negligence claim
by asserting there is no evidence South Green breached any alleged negligence
duty.  The trial court agreed and granted South Green summary judgment.  








Whether South Green has a duty to use
ordinary care to protect invitees such as Michelle Rivera from the criminal
acts of third parties is a question of law for the court to decide.  See
Timberwalk Apart., Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex.
1998).  Generally, a person has no legal duty to protect another from the
criminal acts of a third person.  Id.; Centeq Realty, Inc. v. Siegler,
899 S.W.2d 195, 197 (Tex. 1995).  However, a landlord who controls the premises
does have a duty to use ordinary care to protect invitees from criminal acts of
third parties if it knows or has reason to know of an unreasonable and
foreseeable risk of harm to the invitee. See Timberwalk, 972 S.W.2d at
756; see also Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21 (Tex. 1993)
(concluding that lessor who retains control over the security and safety of the
premises owes a duty to a tenant=s employee to use ordinary care to
protect the employee if the lessor knows or has reason to know of an unreasonable
and foreseeable risk of harm from the criminal acts of third parties). 
Foreseeability requires only that the general danger, not the exact sequence of
events that produced the harm, be foreseeable.  Id. at 756.  The central
issue is whether South Green, at the time of the assault on Michelle Rivera,
knew or should have known of an unreasonable and foreseeable risk of criminal
conduct on the premises.  See Timberwalk, 972 S.W.2d at 756B57.  In making this determination,
this court should consider whether any criminal conduct previously occurred on
or near the property, how recently it occurred, how often it occurred, how
similar the conduct was to the conduct in question, and what publicity was
given the occurrences to indicate that the property owner knew or should have
known about them.  See id. at 757. 

For a property owner to foresee
criminal conduct on property, there must be evidence that other crimes have
occurred on the property or in its immediate vicinity.  Id.  Criminal
activity occurring farther from the owner=s property bears less relevance
because crime rates may be expected to vary significantly within a large
geographic area.  Id.  Evidence of remote criminal activity, however,
may indicate that crime is approaching an owner=s property, but such evidence must be
especially strong and must show that the risk of criminal conduct on the owner=s property is not merely increasing
but has reached a level as to make crime likely.  Id. Thus, for a risk
to be foreseeable, there also must be evidence of criminal activity within the
specific area at issue, either on the landowner's property or closely nearby. Id.








Foreseeability also depends on how
recently and how often criminal conduct has occurred in the past.
Timberwalk, 972 S.W.2d at 757B58.  The occurrence of a significant
number of crimes within a short time period strengthens the claim that the
particular crime at issue was foreseeable. Id. at 758.  Conversely, the
complete absence of previous crimes, or the occurrence of a few crimes over an
extended time period, tends to negate the foreseeability element.  Id.

The previous crimes must be
sufficiently similar to the crime in question as to place the property owner on
notice of the specific danger.  Id.  The prior crimes need not be
identical.  Id.  For example, a string of assaults and robberies in an
apartment complex make the risk of other violent crimes, like murder and rape,
foreseeable.  Id.  On the other hand, a spate of domestic violence
crimes  in the complex does not portend third-party sexual assaults or robberies.
 Id.

The publicity surrounding the
previous crimes also can help determine whether a landowner knew or should have
known of a foreseeable danger. Id. at 757.  Actual notice of past
incidents strengthens the claim that future crime was foreseeable.  Id.
at 757.  However, property owners bear no duty to regularly inspect criminal
records to determine the risk of crime in the area.  Id. at 759.  

To determine whether a duty exists
under Timberwalk, a court should weigh all of these factorsCproximity, recency, frequency,
similarity, and publicity.  Id.  With these factors in mind, we now
review the summary-judgment evidence to determine whether South Green
conclusively established that it owed Michelle Rivera no legal duty to exercise
ordinary care to protect her from assaults such as the one she suffered on
September 15, 2001. The summary-judgment evidence in this case does not prove
that South Green is entitled to a judgment as a matter of law.  The only summary-judgment
evidence South Green offered on this issue was the affidavit by its expert
witness, Dr. Merlyn Moore, who stated that he reviewed the crime statistics for
crime occurring at the building in the two years prior to the assault in
question.  According to Dr. Moore, there had not been any violent crimes
committed at the building during that time period. Dr. Moore concluded
as follows: 








(20)     The
complete and conspicuous absence of a single act of violent crime on the
premises of 12700 North Featherwood Drive for almost three years before the
time of occurrence of the incident made the basis of this lawsuit empirically
substantiates the lack of foreseeability of subject incident in this matter
based on Timberwalk criteria [sic] established by the Supreme Court of
Texas to assess foreseeability of violent crime.[3]


 This affidavit does not satisfy Timberwalk
as it does not offer any opinion or evidence regarding possible crimes
committed near or in the vicinity of the subject premises.  South
Green did not offer any other summary-judgment evidence regarding crimes near
the building.  However, in response to South Green=s motion for summary judgment, the
Riveras offered the affidavit of their expert witness, Dr. Bruce A.  Jacobs,
who reviewed the crime statistics from the Houston Police Department beat in
which the premises in question is located for the period of January 1, 1999
through September 15, 2001.  In his affidavit, Dr. Jacobs specifically stated
that:

(18)     South Green Medical Building is located in
beat 12D30 of the Houston Police Department=s
Clear Lake Division. In the 2 and 3/4 years leading up the incident, HPD data
indicates that 25 robberies, 7 sexual assaults, 46 aggravated assaults, 244
burglaries, 238 burglaries from motor vehicles, and 227 motor vehicle thefts
occurred in that beat.

(19)     Of these 787 offense, 320 (over 40%) occurred
within a mile of the subject premises.

(20)     Nearly 1 in 5 of the violent index crimes
reported in beat 12D30 during the reference period occurred within 2/10 of a
mile of the subject premises.  This figure includes 4 robberies, 6 aggravated
assaults, and 4 sexual assaults. 

 








 Although we agree with South Green
that generally a police Abeat@ would be too broad of an area to consider, Dr. Jacobs, as
required by Timberwalk, also narrowed the police Abeat@ crimes down to only those crimes
that occurred within a Anarrow geographical area@Ca mile and 2/10 of a mile from the
subject premises.  See Timberwalk, 972 S.W.2d at 759 (considering crimes
in a one-mile radius); Texas Real Estate Holdings, Inc. v. Quach, 95
S.W.3d 395, 398B99 (Tex. App.CHouston [1 Dist.] 2002, pet. denied) (concluding that police
beat 6B30 is not a Anarrow geographic area,@ as it covers nine square miles but
stating that 

crimes within one mile radius of the
premises appropriate measure of immediate vicinity); Dickinson Arms‑REO,
L.P. v. Campbell, 4 S.W.3d 333, 338‑39 (Tex. App.CHouston [1st Dist.] 1999, pet.
denied) (considering apartment complex, nearby hotel, two nearby apartment
complexes, all located within one square mile radius).  Based on his analysis,
it was Dr. Jacobs=s opinion that the proximity, similarity, frequency, and
recency of crime in the area immediately surrounding the premises at issue
suggest that the offense was foreseeable.

The summary-judgment evidence in this
case demonstrates the trial court erred to the extent it impliedly ruled that,
as a matter of law, South Green did not know and should not have known of an
unreasonable and foreseeable risk of harm to Michelle Rivera on September 15,
2001.  First, as to proximity, Dr. Jacobs offered evidence of violent crimes within
a mile and 2/10 of a mile from the building.  In weighing the  recency and
frequency, the evidence presented by Dr. Jacobs=s affidavit regarding the crimes and
time period is not disputed.  All of the crimes reviewed by Dr. Jacobs occurred
within two and three-quarters years of the assault in question. Dr. Jacobs=s affidavit shows that in the nine
months preceding the assault on Michelle Rivera, 320 of the 787 offenses
committed in Beat 12D30 were committed within a mile of the building.  This
amounts to more than nine crimes per month within a one-mile radius of the
premises.  Furthermore, within 2/10 of a mile of the premises, there were four
robberies, six aggravated assaults, and four sexual assaults

As for similarity, nearly 1 in 5 of
the violent index crimes reported in Beat 12D30 during the reference period
occurred within 2/10 of a mile of the subject premises, including at least four
robberies, six aggravated assaults, and four sexual assaults. All of these
crimes are crimes committed against a person rather than property and are
similar to the assault and robbery of Michelle Rivera.  They all involve either
violence or the threat of violence.








Finally, there is no evidence that
any of these crimes received publicity.  South Green was not required to
inspect police records to determine whether its building was in a high-crime
area.  Although the publicity factor weighs against finding a duty, we conclude
that the number of similar crimes in the recent past in the immediate vicinity
outweighs the publicity factor.  Thus, we conclude that South Green failed to
establish as a matter of law that, on September 15, 2001, it did not know and
should not have known of an unreasonable and foreseeable risk of criminal
conduct on the premises.  South Green did not conclusively prove that it had no
duty to use ordinary care to protect Michelle Rivera from the criminal acts of
third parties.  Accordingly,
we sustain the Riveras= first issue.   

 

B.      Did
the trial court err in granting South Green=s no-evidence motion for summary
judgment on the breach-of-duty element of the Riveras= negligence  claim? 

 

In their second
issue, the Riveras contend that the trial court erred in granting South Green=s no-evidence
summary-judgment ground attacking the breach-of-duty element of their
negligence claim.  The Riveras contend that they brought forth more than a
scintilla of evidence to defeat summary judgment on this element of their
claim. 

On the issue of whether South Green
breached a duty to use ordinary care to protect Michelle from the criminal acts
of third parties the Riveras offered Dr. Jacobs=s affidavit testimony, in which he
identified the following possible breaches of duty by South Green: 

(1)       South
Green=s failure to have a mechanism in
place to detect, deter, and interdict criminal trespassers at times when the
access doors were unlocked but when levels of business activity inside the
premises were sufficiently low to render the deterrent effect of informal
social controlCthe natural surveillance from patients, staff, doctors, and other
inviteesCunavailable.

(2)       Failure to warn tenants of known criminal
activity occurring at the building and in the area surrounding the building. 

 

(3)       Failure to provide or install Areal-time surveillance@ or security
cameras of the premises= interior hallways and corridors , which Dr. Jacobs
stated would have deterred a crime of the type committed against Michelle.








(4)       Real-time surveillance
might have prohibited the perpetrator from robbing and assaulting Michelle
Rivera, because if the assailant was in the building prior to the assault
(evidence suggests that another burglary was committed in a tenant suite down
the hall from Hope Star immediately prior to the assault on Michelle Rivera),
building representatives would have been alerted to his presence. 

To
defeat a no-evidence motion for summary judgment, the Riveras were required to
bring forth more than a scintilla of probative evidence to raise a genuine
issue of material fact on the breach-of-duty element, by raising a fact issue
as to whether South Green did something an ordinarily prudent actor exercising
ordinary care would not have done under those circumstances or failed to do
that which an ordinarily prudent person would have done in the exercise of
ordinary care.   See Gannett Outdoor Co. v. Kubeczka, 710 S.W.2d 79, 87
(Tex. App.CHouston [14 Dist.] 1986, no writ).  We conclude that the Riveras raised a
genuine issue of material fact on the breach-of-duty element through Dr. Jacobs=s affidavit.  Accordingly, we sustain
the Riveras= second issue. 

C.      Did the
trial court err in granting both South Green=s and Kastle=s no-evidence
motions for summary judgment on the DTPA claims? 








In their third issue, the Riveras contend that the
trial court erred in granting both South Green=s and Kastle=s no-evidence
motions for summary judgment attacking each of the essential elements of their
DTPA claims.  To defeat
a no-evidence motion summary judgment, the Riveras were required to bring forth
more than a scintilla of probative evidence that raises a genuine issue of
material fact on each of these essential elements.  See Dolcefino, 19
S.W.3d at 916.  One of these essential elements is that the Riveras
are DTPA consumers. Doe v. Boys Clubs of Greater Dallas, Inc., 907
S.W.2d 472, 478 (Tex. 1995).  Whether a plaintiff is a consumer under the DTPA
is a question of law for the court to decide.  Holland Mortgage & Inv.
Corp. v. Bone, 751 S.W.2d 515, 517 (Tex. App.CHouston [1st
Dist.] 1987, writ ref=d n.r.e.).  However, when the
underlying facts necessary to determine consumer status are disputed there is a
question of fact.  Roof Sys., Inc. v. Johns Manville Corp., 130 S.W.2d
430, 440 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  A
consumer is an individual who seeks or acquires goods or services by purchase
or lease. Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649 (Tex. 1996). 
The Riveras argue that even though there is no direct contractual relationship,
they are consumers vis a vis both South Green and Kastle.  However, the
Riveras offered no proof showing that they sought or acquired goods or services
by purchase or lease from either Kastle or South Green. Moreover, Michelle
Rivera conceded that she never entered into an agreement or contract with
Kastle or South Green.  Kastle contracted with South Green to provide a
security system for South Green=s office building.  This contract,
however, does not apply to the Riveras.  Any benefit derived from the purchase
or lease of services by South Green from Kastle would be merely gratuitous and
incidental. See Esquivel v. Murray Guard, Inc., 992 S.W.2d 536, 543B44 (Tex. App.CHouston [14th
Dist.] 1999, no pet.) (concluding that hotel guest was not an intended
third-party beneficiary of a contract between hotel and security company); Vinson
& Elkins v. Moran, 946 S.W.2d 381, 407 (Tex. App.CHouston [14th
Dist.] 1997, writ dism=d by agr.) (concluding that Awhen the goods or
services are purchased for the primary purpose of benefitting the business, and
any use or benefit of those products extends to the employee only incidentally,
the employee does not have standing to sue under the DTPA.@). 

In this case, because Michelle Rivera was an employee of
Hope Star Orthopedic, and, at most, merely an incidental beneficiary to the
contract between Kastle and South Green, there is no evidence of consumer
status.  Because the Riveras failed to bring forth more than a scintilla of
evidence in support of an essential element of their DTPA claims, a no-evidence
summary judgment was proper.  See Tex.
R. Civ. P. 166a(i).  Accordingly, we overrule the Riveras= third issue. 

D.      Did the
trial court err in granting Kastle=s no-evidence
motion for summary judgment on the Riveras=
third-party-beneficiary breach-of-contract claim?








In their fourth issue, the Riveras contend that the trial
court erred in granting Kastle=s no-evidence motion for summary judgment
on their third-party-beneficiary breach-of-contract claim.  The Riveras contend
that they presented more than a scintilla of evidence in support of each
element of this claim.  They contend Michelle Rivera was a third-party
beneficiary of the KastleBSouth Green contract for the security card
system that Kastle installed at the building. 

To recover under a third-party beneficiary claim for breach
of contract, the Riveras were required to raise a genuine issue of material
fact as to whether they are third-party beneficiaries of this contract.  A
party is presumed to contract only for its own benefit and any intent to
benefit a third party must be clearly apparent and will not be presumed.  Greenway
Park Townhomes Condominium Ass'n, Inc. v. Brookfield MUD, 575 S.W.2d 90, 91
(Tex. Civ. App.CHouston [14th Dist.] 1978, no writ).  Any
doubt concerning intent should be resolved against the third party.  Id. 
The requirements for a third party to recover as beneficiary of a contract are:
(1) the contracting parties intended to benefit the third party; and (2) the
contracting parties entered into the contract directly and primarily for the
third party=s benefit.  Dorsett Bros. Concrete Supply, Inc. v.
Safeco Title Ins. Co., 880 S.W.2d 417, 421 (Tex. App.CHouston [14th
Dist.] 1993, writ denied).

A third‑party beneficiary contract cannot be created
by implication. MCI Telecomm. Corp. v. Texas Util. Elec. Co., 995 S.W.2d
647, 651 (Tex. 1999).  Therefore, a third‑party beneficiary will not be
recognized unless the intent to make them so is clearly written or evidenced in
the contract.  Id.  Thus, Athe fact that a
person is directly affected by the parties= conduct, or that
he >may have a
substantial interest in a contract=s enforcement,
does not make him a third party beneficiary.=@ Loyd v. ECO
Resources, Inc., 956 S.W.2d 110, 134 (Tex. App.CHouston [14 Dist.]
1997, no writ).  Consequently, the law presumes parties contract for themselves
unless it  Aclearly appears@ that they
intended a third party to benefit from the contract.  MCI Telecomm., 995
S.W.2d at 651.  AIf there is any reasonable doubt as to an
intent to confer a direct benefit, the third‑party beneficiary claim must
fail.@ MJR Corp.,
760 S.W.2d at 11. 








To qualify as a third‑party beneficiary, the party
must show that she is either a donee or creditor beneficiary of the contract,
not one who is benefitted only incidentally by the performance of the
contract.  MCI Telecomm., 995 S.W.2d at 651.  A donee beneficiary is a
party to whom the performance promised, when rendered, will come to her as a
pure donation; a creditor beneficiary is one to whom the performance promised
will come in satisfaction of a legal duty owed to her by the promissee.  Id. 
This legal duty may include indebtedness, contractual obligations, or other
legally enforceable commitments owed the third party.  Id.

To qualify as a creditor beneficiary, the maker of the
contract (here, Kastle) must not only have intended to confer a benefit upon
the third party (Michelle Rivera), but it also must have intended for the third‑party
to have the right to enforce the agreement. See MJR Corp. v. B & B
Vending Co. ., 760 S.W.2d 4, 16 (Tex. App.CDallas 1988, writ
denied).  Unless both intents were exhibited on her behalf, the third party
remains no more than an incidental beneficiary. Id.

For Michelle Rivera to recover as third‑party
beneficiary of the contract, she had to overcome the legal presumption that
Kastle and South Green contracted for themselves alone, and instead, establish
that they contracted for her benefit as well.  The law requires the intention
of the contracting parties to benefit a third party be Aclearly and fully
spelled out or enforcement by the third party must be denied.@  MCI Telecomm., 995 S.W.2d at
651.  The KastleBSouth Green contract is devoid of any
third‑party beneficiary language, including benefits explicitly conferred
on behalf of the tenants or occupants of the South Green building.  See
Esquivel, 992 S.W.2d at 544 (holding that hotel guest was not an intended
third-party beneficiary of a contract between the hotel and security company
for purposes of bringing a breach-of-contract claim, and a donee-beneficiary is
not likely to be an intended beneficiary of a business contract).  Because the
Riveras failed to bring forth any evidence that Michelle Rivera was more than
an incidental beneficiary of the contract between Kastle and South Green, the
trial court properly granted summary judgment on this claim.  Therefore, we overrule the
Riveras= fourth issue. 








V. Conclusion

The summary-judgment evidence does not support the trial court=s implied ruling that, as a matter of
law, South Green did not know and should not have known of an unreasonable and
foreseeable risk of criminal conduct on the premises.  Therefore, the trial court
erred in granting South Green=s motion for summary judgment as to the
duty element of the Riveras= negligence claim against South Green.  In
addition, the Riveras raised a genuine issue of material fact as to whether
South Green breached this duty.  Thus, the trial court erred in granting South
Green=s motion for
summary judgment as to the Riveras= negligence
claims. 

Because the summary-judgment evidence proves as a matter of
law that the Riveras are not DTPA consumers and that Michelle Rivera is not a
third-party beneficiary of the Kastle contract, the trial court properly
granted South Green=s and Kastle=s motions for
summary judgment as to the Riveras= DTPA and
third-party-beneficiary breach-of-contract claims. Accordingly, we affirm the
trial court=s judgment as to all of the Riveras= claims against
Kastle and as to all of their claims against South Green, except for their
premises liability/negligence claim, as to which we reverse the trial court=s judgment.  We
remand that claim to the trial court for further proceedings consistent with
this opinion. 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

                                                               

Judgment rendered
and Opinion filed August 24, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.









[1]  Although Kastle filed a joint
traditional/no-evidence motion for summary judgment, it appears from the trial
court=s order that, as to Kastle=s motion, the trial court granted the summary judgment
only on the no-evidence grounds.  Thus, to the extent that the Riveras
challenge the trial court=s ruling as to Kastle, we use only the standard of
review governing no-evidence motions. 





[2]  We note that the Riveras do not appeal any portion
of the summary judgment granted in favor of O=Connell Realty.  In addition, the Riveras do not appeal the summary
judgment granted in favor of any of the defendants on the claims for fraud,
constructive fraud, negligent misrepresentation, and breach of warranty. 





[3]  Emphasis added.